COLUMBIA WATER POWER CO. v. CAMPBELL, COUNTY TREASURER.

TAXATION—COLUMBIA CANAL—CONSTITUTION.—The acts of 1887 and 1889 are legislative contracts by whose terms the Columbia Canal, its lands and appurtenances, were exempt from all taxes except for State purposes; the Legislature had the power, under the Constitution of 1868, to make such contract and a purchaser from the board of trustees to whom it was sold under the amended act of 1890 takes it free from all taxes except for State purposes. A levy and collection of county taxes on said property by a State officer is in violation of art. I., sec. 10, of U. S. Constitution, and art. I., Sec. 21, of Constitution of this State of 1868. Legislative history of the Columbia Canal stated.

Before J. H. HUDSON, special Judge, Richland, 1903. Affirmed.

Three actions by Columbia Water Power Co. against James S. Campbell, as County Treasurer for Richland County. The Circuit decree is as follows:

"This is an action to recover certain taxes levied, assessed and collected for county purposes for the fiscal year 1898 by the auditor for Richland County on the land, the Columbia Canal and the appurtenances thereof transferred to the board of trustees of the said Columbia Canal, under the provisions of the act of the General Assembly, approved December 24, 1887, and paid by the plaintiff to the defendant as county treasurer for Richland County. The complaint alleges:

"(1) The due incorporation of the plaintiff.

"(2) The former ownership of the State of the Columbia Canal and certain lands and appurtenances thereof in Richland County.

"(3) The passage by the General Assembly (24 December, 1887,) of 'an act to incorporate the board of trustees of the Columbia Canal, to transfer to the said board the Columbia Canal, with the lands now held therewith and its appurtenances, and to develop the same;' an amendment to this act, December 24, 1890; the conveyance of the said Columbia Canal, with the lands now held therewith and its appurtenances, to said board of trustees, in pursuance thereof, and their possession under the terms of said act; the powers of the said board of trustees, especially their right to sell said property and all the rights and franchises conferred by the act and amendment thereto.

"(4) The sale by the board of trustees to the plaintiff for a large sum of money of the entire property of the Columbia Canal, the lands held therewith and its appurtenances thereof, together with all the rights and franchises conferred by the act of the General Assembly.

"(5) That said sale and purchase of said property and franchises constituted a contract with the State of South Carolina, and that the exemption from taxation of the Columbia Canal, the lands therewith and its appurtenances, contained in section 17 of the act, was part of the consideration for which the plaintiff paid its money and its property, the said Columbia Canal, the lands therewith and appurtenances, was exempt from taxation, except for State

purposes, by the Constitution of the United States (art. I., sec. 10,) and of South Carolina (art. I., sec. 21,) forbidding the impairment of such contracts.

"(6) The payment by the plaintiff from its purchase in the year 1891 of the taxes assessed on said property and franchises for State purposes only, up to the year 1898, this being the only tax levied, assessed and collected in that period on this property.

"(7) The direction of the Comptroller General, acting under the provisions of the acts of the General Assembly relative to the assessment, levy and collection of taxes in this State, ordering the county auditor of Richland County to levy a county tax on said property complained of, and to enter the same on his tax duplicate and turn the same over to the defendant for collection, and the demand by the defendant on the plaintiff for the payment of the sum so assessed and levied.

"(8) That the tax complained of was so assessed and levied; that the defendant, the duly qualified county treasurer of Richland County, demanded payment of the tax complained of as wrongfully levied.

"(9) That the plaintiff applied by petition to the Comptroller General of the State to have the assessment of its property corrected by striking out said illegal tax as being for other than State purposes, which application was refused on the grounds that the exemption claimed by the plaintiff from such tax was unconstitutional and void.

"(10) That the plaintiff then under exigency and constraint paid said tax under protest, and applied to the Comptroller General to direct the defendant to return to said plaintiff said amount so wrongfully and illegally collected, which application was also refused by the Comptroller General for the same reason.

"(11) That said tax was illegal and void, being by its collection an impairment of the contract of sale and purchase, contrary to the Constitution of the United States (art. I., sec. 10,) and the Constitution of South Carolina (art. I.,

sec. 21,) ; and its collection so enforced was the taking of plaintiff's property without due process of law, in violation of the fourteenth amendment, sec. I., to the Constitution of the United States.

"(12) And asks judgment for $370, with interest at seven per cent. from the 28th of February, 1899, and costs.

"To this complaint the defendant demurred on the general ground that the complaint did not state sufficient facts to constitute a cause of action, and sets out six objections—(1) That the act of General Assembly allowing such exemption was and is null and void, being forbidden by sec. I., art. IX. of the Constitution of the State of South Carolina (1868). (2) That such exemption, if valid, was a mere personal immunity to the board of trustees, and was not and could not be transferred by them to the plaintiff as alleged. (3) That such exemption being a mere gratuity and immunity, if valid, was not a contract; that no power was given by the General Assembly to make any sale or transfer of such exemption to any purchaser of the property entrusted to the said board, and that there could be in law no contract between the board and the plaintiff valid and effectual to sell and convey said exemptions from taxation as alleged in the complaint. (4) That if the said board of trustees could make sale of such exemption from taxation to the said company, it did not, as alleged in the complaint, transfer and convey such exemption from taxes to the said company, because such exemption, being a mere personal immunity, was not and could not in law be embraced in the rights and franchises conferred by the acts of the General Assembly on the said board of trustees of the Columbia Canal and conveyed to said company as stated in said complaint. (5) That there was no such contract with the plaintiff, and the State of South Carolina, through its properly constituted authorities transferring said exemption, the obligation of which could be impaired by the collection of the tax complained of. (6) That if there was such contract on the part of the State with

the plaintiff, it is null and void as being in direct conflict with sec. I., art. IX., of the Constitution of 1868.

"The demurrer thus raises two essential questions upon which this case must turn.

"I. Could the General Assembly of the State of South Carolina in the act of 1887, exempt from taxation the land, the canal and the appurtenances thereof, transferred under the provisions of said act to the board of trustees of the Columbia Canal?

"II. If so, did this exemption follow the land, the canal and its appurtenances, when the same passed by purchase under the said act, and the amendatory act, into the possession of the plaintiff?

"The demurrer admits all of the allegations of fact contained in the complaint. It, therefore, admits that the board of trustees, after compliance with all of the requirements of the two acts of the General Assembly authorizing the sale, on the 11th day of January, 1891, conveyed to the plaintiff the land, the canal and its appurtenances, for the consideration of $60,000, and the assumption of the payment of the principal and interest on $200,000 of bonds secured by mortgage upon the said property, and that the exemption from taxation of the property mentioned in section 17 of the act of 1887 was a part of the consideration for which the plaintiff paid its money and assumed the liabilities of the board of trustees, in accordance with the provisions of said act.

"In the decision of these questions the Court must take judicial cognizance of the public acts of the Legislature and the history of the State and its internal public affairs.

"It appears that as early as 1818, the General Assembly made provisions for the establishment of the Columbia Canal (6 Stat., 91 and 124,) as part of the system of navigation in the State. Tht it appropriated money and acquired the lands for such improvement and made the Columbia Canal and it was opened throughout its whole length for public use, and was so used until 1843, when a part of it was leased for a period of twenty-one years (11 Stat., 304), but the right

of the public to use it for navigation was reserved in said lease, and the lessee required by the act to keep it open for that purpose.  On the 21st of December, 1866, and the 21st of December, 1868, a sale of the canal was authorized, but in both acts the purchaser took it subject to a charge imposed to keep it open for public use for purposes of navigation. March 12, 1878, the Legislature, by act (16 Stat., 444,) resumed its title to the property, and 8th December, 1882, authorized the board of directors of the State Penitentiary to take charge of the canal and all the lands and property connected, to be developed, managed and controlled by said board of directors in connection with the penitentiary.  By authority of the act of the General Assembly, 24th December, 1887 (18 Stat., 1090,) the canal and all lands held therewith and its appurtenances were conveyed to a board of trustees whose duties were to develop the canal, to furnish water power for the penitentiary, water power for the city of Columbia, and to keep the same open for purposes of navigation, and when developed and completed to turn it over to the city of Columbia, said property and franchises being by said act declared to be exempt from taxation, except for State purposes only.  The 3d and 23d sections of this act, subsequently amended by an act of the General Assembly, approved December 24, 1890 (20 Stat., 967), (1) defined the purpose of the State and the duty of the board of trustees to be 'to develop the said canal for navigation, to furnish the city of Columbia with an adequate supply of water, and other hydraulic purposes, to supply water power for the use of the penitentiary,' and (2) conferred on the board of trustees the power of sale as set out in paragraph four of the complaint.

"That the property referred to in this action was exempt from taxation while the State actually held it admits of no doubt, and as a matter of fact is admitted by the pleadings. The State of South Carolina, by the act of 1887, vested the property in a board of trustees, and in terms, among the rights and franchises which it vested in the said board, was

to hold said land exempt from taxation except for State purposes, and the act creating this board declared the trust to be for the benefit of the city of Columbia, a municipality created by the State. By the amendment of this act its trustees were authorized to develop it for the purpose, among other things, of providing an adequate water supply for the city of Columbia; its sale was directed to any purchaser who would take it with all the rights and franchises granted to said board of trustees, which they were specially empowered to convey, and subject to all the duties in respect to navigation of the canal, the power to be furnished to the State for the penitentiary and the city of Columbia, both as to power and water supply. It is also a fact that is admitted that said board of trustees did convey the canal and property to the plaintiff with all the rights and franchises conferred upon them, including said exemption from taxation, for a large and valuable consideration, and the plaintiff has since held it and has complied with all the duties imposed upon it.

"I admit that all property in this State is subject to taxation, except such as may be exempted by the Constitution. These acts were passed and the sale made under them prior to the Constitution of 1895. If, therefore, the act of 1887 concerning the Columbia Canal and its transfer to the board of trustees constituted a contract between the State and the board; or, if the amendatory act of 1889, authorizing a sale, constituted a contract with the purchaser upon such sale being made, the Constitution of 1895 cannot disturb the terms of such contract, for that would be an impairment of the obligation of a contract by constitutional amendment, if there be any inconsistent provisions in the Constitution of 1895 with a pre-existing legislative contract. This is expressly forbidden by the Constitution of the United States, art. I., sec. 10. Hence, our consideration is confined to the Constitution of 1868.

"The demurrer refers to sec. 1, art. IX., of the State Constitution of 1868.

"If the land, the canal and its appurtenances, were property existing in the hands of a citizen prior to the act of exemption, it may be that such attempted exemption would be invalid. But the position here is that this property was property belonging to the State, and while as a part of the domain of the State it was not subject to taxation, that the Legislature had full authority and control over the terms and conditions upon which it should be sold, and that in such sale or in such transfer it could make, as a part of the consideration for which the transferee was willing to assume dominion and the liabilities connected with the property, a condition that it should be exempt from taxation. For a stronger reason the Legislature could create a qualified exemption; that is, an exemption from taxation for county purposes, for school districts, etc., but not from State purposes. And such General Assembly, having full control over the disposition of such property, and the terms upon which it could or would grant the same to any person or corporation for the purpose of effectually providing an inducement in the future for the furtherance and carrying out of public purposes mentioned and to be subserved by the act of 1887, could fix upon such property such an exemption which would follow it into the hands, not only of the board of trustees, but of its successors, transferee and assigns.

"I, therefore, insist that this is not a mere personal gratuity or privilege, either to the board of trustees or to the plaintiff, but that the same has become fixed upon the property itself, inheres in and to it, and follows it in whomsoever's hands it may come lawfully. It may be that a privilege or immunity from taxation is not, technically speaking, a corporate franchise; but it is not in the sense of a corporate franchise that the words 'rights and franchises,' as I will endeavor hereafter to show, were used in the acts of 1887 and 1889.

"Using the language of the Texas Court in the case of *International etc. R. Co.* v. *State,* 41 A. & E. R. Cases, 618, 'looking to the provisions of the act of March 10, 1875,

we think there can be no doubt that the exemption from taxation given by it, instead of being a right investing only in the appellant, is a right which inheres in the property to which it applies, and follows it into the hands of whomsoever may become its owner. The exemption is not given to a company named alone, but to its assigns and successors as well; thus evidencing an intention that the exemption from taxation should adhere to the property exempted, and follow it into the hands of whomsoever may become its owner.'

"In section 17 of the act the exemption is not confined to the board of trustees. As further evidence that it was intended that such exemption should adhere in the specific property, the exception is made 'that the buildings hereafter erected and the lands hereafter acquired shall be taxable unless they are exempted under the general law of the State.'

"In the case of the *State of New Jersey* v. *Wilson,* 7 Cranch, 164, the great Chief Justice Marshall delivered the opinion of the Court. An act provided that certain lands purchased from the Delaware Indians and set apart for their use, in consideration of a release by them of other lands, should not thereafter be subject to any taxation, any law or usage or custom to the contrary notwithstanding, and further restraining the Indians from making any lease or sale. Subsequently, on a petition from the Indians, the Legislature, by an act, authorized a sale of the land, which made no reference to the exemption from taxation. In 1803 the land was sold by the Indians to private parties. After the sale the Legislature, in 1804, passed an act repealing the exemption from taxation. The Chief Justice said: 'The privilege, though for the benefit of the Indians, is annexed, by the terms which create it, to the land itself, not to their persons. It is for their advantage that it should be annexed to the land, because in the event of a sale, on which alone the question should become material, the value would be enhanced by it. It is not doubted but that the State of New Jersey might have insisted on a surrender of this privilege as the

sole condition on which a sale of the property should be allowed. But this condition has not been insisted on; the land has been sold, with the assent of the State, with all its privileges and immunities. The purchaser succeeds, with the assent of the State, to all the rights of the Indians. He stands, with respect to this land, in their place, and claims the benefit of their contract. This contract is certainly impaired by a law which would annul this essential part of it.'

"The acts of 1887 and 1889 are a legislative contract, by the terms of which the canal, its lands and appurtenances, were exempted from all taxes, except for State purposes only. Such a contract the Legislature unquestionably has the power to make. The rule in the United States Supreme Court is as follows: 'This Court's view of that clause of the Constitution, in its application to the States, is now, and ever has been, that the State Legislatures, unless prohibited in terms by State Constitutions, may contract by legislation to release the exercise of taxing a particular thing, corporation, or person, as that may appear in its acts, and that the contrary has not been open to inquiry or argument in the Supreme Court of the United States.' *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436 (1861).

"In the cases of the *Home of the Friendless and the Washington University,* which were decided in 1869, 8 Wallace, 430, and 8 Wallace, 439, the State of Missouri had exempted the property of these institutions from taxation. Subsequently the Constitution of the State was changed, and prohibited all exemptions from taxation. The Supreme Court of Missouri held that the property was taxable under the new State Constitution. The Supreme Court of the United States (Chase, Miller and Field dissenting) reversed this opinion, using this language: 'The validity of this contract is questioned at the bar on the ground that the Legislature had no authority to grant away the power of taxation. The answer to this position is that the question is no longer open for argument here, for it is settled, by repeated adjudications of this Court, that a State may by contract based on a con-

sideration exempt the property of an individual or corporation from taxation, either for a specified period or permanently. And it is equally well settled that the exemption is presumed to be on sufficient consideration and binds the State if the charter containing it is accepted.'

"The purchaser of the canal, its lands and appurtenances, paid a valuable consideration. The case at bar, therefore, is unlike *Grand Lodge.* v. *New Orleans,* 166 U. S., 146, in which case the Court, while fully recognizing the power of a State to so exempt property from taxation by contract that it could not afterwards levy, assess and collect taxes thereon, held that the exemption in that case was without any consideration; 'that it was a mere gratuity, or bounty, which it was competent at any time to terminate.'

"The same section of the act of 1887 exempts the authorized issue of bonds from taxation, except for State purposes. These bonds have indorsed upon them this very exemption. This is a contract with the bondholders which follows the bonds. *Woodruff* v. *Trapnall,* 10 How., 190; *Furman* v. *Nichol,* 8 Wallace, 44; *State* v. *Stoll,* 17 Wallace, 425. The Court in the case of *Furman* v. *Nichol,* page 61, said: 'The guaranty is in no sense a personal one. It attaches to the note—is a part of it as much so as if written on the back of it, and goes with the note everywhere and invites everyone who has taxes to pay to take it.' This is quoted with approval in Judson on Taxation, par. 49, page 54. 'The grant of all the powers, rights and privileges granted by the charter of another corporation carries with it an exemption from taxation included in such charter.' Judson on Taxation, par. 67, page 68; *Memphis Gas Company* v. *Shelby County,* 109 U. S., 398. The exemption of the property of a railroad company and the shares thereof has been held to include the exemption of the franchise from taxation. Judson on Taxation, par. 68, page 68.

"The same line of reasoning which leads to the conclusion that under our Constitution of 1868 the General Assembly could not in the sale of this property, as a part of the con-

sideration of its transfer and maintenance of it as a public concern, exempt any part of it from taxation, would lead to the conclusion that the General Assembly could not exempt from taxation bonds issued by the State under a contract that they should be exempt from taxation. Judson on Taxation, par. 72.

"It is also to be thoroughly understood that there is a wide distinction between contractural legislation and governmental legislation. The State may by legislative act exempt from taxation, if not prohibited by the State Constitution, by contract, but cannot create a contract with one of the governmental instruments of the State. Judson on Taxation, par. 75.

"Our Supreme Court has considered the provisions of art. IX., sec. 1, of the Constitution of 1868, very fully in *Bank v. Darlington*, 50 S. C., 344, 27 S. E., 846, and it has always been found necessary to bring the property within one of the classes which that section exempts—among them being 'property exempted by law for municipal purposes.' The declared purpose of the act was a setting apart of this property with its rights and franchises for the benefit of the city of Columbia, a municipality created by the State. What did the Legislature authorize to be conveyed to the trustees? Was it a fee, or a franchise, or a right? The Court holds that the conveyance was a fee of the actual land and of all the rights and franchises incident to it, and which were necessary to make it most useful to affect the purpose of the grant—and this includes the right to hold it exempt from taxes except for State purposes. Whether this particular exemption was, in itself, a franchise, might be ground for some argument. In Jacob's Law Dictionary it is declared that such an exemption is a franchise: 'Franchise—A privilege or exemption from ordinary jurisdiction as for a corporation to hold pleas to such a value, etc., and sometimes it is an immunity from tribute, whether it is either personal or real.' Jacob's Law Dictionary, title Franchise. There are cases which seem to question this definition to its fullest

extent, but it is hardly necessary to pass upon this, for it is held by the highest authority that such an exemption is 'part of the franchise, and often a valuable or essential part of it.' (*Wilmington R. R.* v. *Reid,* 13 Wall, 264, cited with approval *G. & S. I. R. R. Co.* v. *Heeves,* 183 U. S., 67, see page 74) ; and it seems that this is so in this case, for the Legislature, in authorizing the trustees to convey to a purchaser said property, declared that all the rights and franchises thereto belonging should vest in the purchaser. The purchaser assumed certain trusts and obligations that were annexed to the property. In consideration for this it is but right that the exemption from taxation that was annexed to the property should follow it into the purchaser's hands as a right and franchise belonging to the property. It was in no sense a personal immunity, but was and is a valuable part of the franchise conferred upon the board of trustees as part of this property, and was and is such a vested right that they could and did dispose of for value to the plaintiff.

"It is held that 'the term "contract," in the Constitution of the United States (art. I., sec. 10,) is used in its ordinary sense as signifying the agreement of two or more minds for consideration from one to the other to do or not to do certain acts, and it is held that there is the same necessity for a consideration to make a contract of exemption as there would be if the contract was between private parties.' *Grand Lodge* v. *New Orleans,* 166 U. S., 143.

"The act of the Assembly of 1887, as amended by act of 1890, was an offer to sell on the part of the State to anyone who would purchase the canal, the lands therewith and appurtenances thereof, and would assume the indebtedness thereon, and the trust and duties appertaining to said canal, the land therewith and appurtenances thereto, and this offer being accepted by the plaintiff and title to said land, the canal and its appurtenances having been made to the plaintiff pursuant to said act and the amendment thereto, a contract between the State of South Carolina and the plaintiff was created and entered into, which the State had the power to make

and which it saw proper to make in the exercise of said power, and this contract was for a valuable and adequate consideration, securing thereby the improvement of one of the great public works for purposes of navigation, adequate water power for the use of its penitentiary and large benefits in water power and water supply to the city of Columbia, and the right of the board of trustees to transfer said property and all the rights and franchises conferred upon said board is distinctly declared by the 23d section of the act of 1887, as amended December 24, 1890.

"What was the effect on this contract and sale by the levy, assessment and collection of the tax complained of? Clearly to lessen the value of the property sold. The plaintiff bought under an agreement that the vendor would warrant it to it free of taxes, except for State purposes, and they paid a price for this exemption which was a part of the property and rights and franchises sold. For the State to ignore this contract and direct the levy, assessment and collection of taxes other than for State purposes is a substantial impairment of the contract which it has made with the plaintiff and is in violation of art. I., sec. 10, of the Constitution of the United States, and of art. I., sec. 21, of the Constitution of the State of South Carolina, 1868.

"For these reasons the demurrer is overruled; an order has already been made that the plaintiff have judgment in accordance with the prayer of its complaint."

From this decree, the defendant appeals.

*Attorney General Leroy F. Youmans,* for appellant, adopts as his argument that filed by his predecessor, Hon. U. X. Gunter, who cites: 70 S. C., 446; 132 U. S., 185; 114 U. S., 185.

*Mr. B. L. Abney,* contra, cites: 6 Stat., 91, 124; 67 Fed. R., 291; 6 Stat., 213, 267; 11 Stat., 304; 13 Stat., 293, 378; 14 Stat., 368; 16 Stat., 360, 444; 17 Stat., 87; 18 Stat., 139, 538; 19 Stat., 1090; 20 Stat., 967; 8 Fla., 46; 9 Ohio St.,

627; Fed. Cas. No. 16763; 15 Fed., 790; 24 Atl., 725; 67 Fed., 292; 51 Am. R., 669; 1 Swan, 269; 81 Wis., 554; 9 A. & E. Corp. Cas., 431; 43 S. C., 557; 179 U. S., 250; 11 Pet., 607; 115 U. S., 650; 85 Fed., 364; 43 S. C., 170; 13 Wall., 273; 191 U. S., 379; 166 U. S., 147; 201 U. S., 559; 17 S. C., 279; 8 Wall., 430; 15 Rich., 190; 6 Gill, 288; 37 Fed., 27; 6 McLean, 386; 39 S. C., 13; 3 S. C., 379; McM. Eq., 145; 85 Fed., 368; 36 Ia., 405; 27 S. C., 107; 2 McC., 219; 70 S. C., 446; 71 S. C., 485; 45 L. R. A., 308; 34 L. R. A., 820; 159 U. S., 628; 25 S. C., 262; 1 Rob., 782; 47 Pa. St., 468; 16 Fla., 147; 7 Cranch, 164; 17 Tenn., 486; 171 U. S., 186; 114 U. S., 185; 172 U. S., 181.

July 28, 1906.  The opinion of the Court was delivered by

Mr. Justice Gary.  This Court is satisfied with the reasons clearly and ably stated by his Honor, the Circuit Judge, in overruling the demurrer, and the appeal is, therefore, dismissed.