19433

Keith M. HARPER, Individually and representing the taxpayers and property owners of Georgetown County, South Carolina, Appellant, v. A. B. SCHOOLER, as Chairman, et al., Respondents.

(189 S. E. (2d) 284)

488

*Patrick J. Doyle, Esquire,* of Georgetown, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* of Columbia, *Sylvan L. Rosen,* and *Auther M. Flowers* of *Smith, Moore, Flowers & Doar,* Georgetown, and *Theodore B. Guerard, Sinkler Gibbs Simons & Guerard,* of Charleston,

May 31, 1972.

*Per Curiam:*

This is an action challenging the constitutionality of Act No. 156 of the Acts of 1971, 57 Stats. at L. 134, which authorizes the issuance of bonds for the purpose of certain pollution control facilities. The appeal is from a circuit decree sustaining the validity of the Act against all objections. We have fully considered the said decree which will be reported herewith as the judgment of this Court, with one exception.

Since the parties are proceeding under and relying upon the above cited Act, we find it unnecessary to decide whether, as held by the lower court, the parties could have financed the particular facilities by means of the Industrial Revenue Bond Act, 1967 Act No. 103, 55 Stats. at L. 120, if so minded. We, accordingly, intimate no opinion thereabout. We do agree with the reasoning of the lower court, however, to the effect that the bonds here proposed, at least to an extent, serve the same public purpose as bonds issued under the Industrial Revenue Bond Act.

## DECREE OF JUDGE SINGLETARY

The Plaintiff has instituted the captioned action pursuant to the Uniform Declaratory Judgment Act individually and as a representative of a class consisting of the taxpayers and property owners of Georgetown County, South Carolina, to contest the constitutionality of the legislation enacted at the 1971 Session of the South Carolina General Assembly, entitled "An Act To Authorize Each Of The Counties Of The State To Contract With Industries Located Therein For The Acquisition, Construction Or Operation Of Air Or Water Pollution Control Facilities; To Authorize Each County To Issue Revenue Bonds Payable Solely From Payments To Be Made By Such Industries; To Prescribe The

Terms And Conditions Of Such Revenue Bonds, The Remedies Of Those Who May Acquire The Same, And The Terms And Conditions Under Which Such Revenue Bonds May Be Issued; To Provide That Such Bonds And Any Agreements Made In Connection Therewith Shall Not Constitute An Indebtedness Of Such County Or A Pecuniary Liability Of Any Kind; To Provide The Purposes For Which The Proceeds From The Sale Of Such Bonds May Be Used; And To Provide For Borrowing In Anticipation Of The Issuance Of Such Bonds And For The Refunding Of Bonds Issued Hereunder; And To Confirm The Existing Authorization Of Incorporated Municipalities To Construct And Finance Water Pollution Control Facilities" (hereinafter called the "Bond Act").

The Bond Act was passed by the General Assembly in order to provide statutory authority to permit counties and incorporated municipalities of the State to issue revenue bonds under the terms and conditions of the Bond Act whose proceeds would be applied to acquire and construct facilities to eliminate, mitigate or prevent air and water pollution, thus assisting industry to raise moneys to pay the cost of such facilities.

The Defendants include the County Board of Commissioners of Georgetown County (hereinafter called the "County Board"), International Paper Company, a New York corporation (hereinafter called "International"), and Daniel R. McLeod, as Attorney General of the State of South Carolina, all of whom have filed Answers contending that the Bond Act is valid and constitutional in all respects.

Pursuant to an Order dated May 15, 1971, notice of the institution of this action was duly published in the Charleston, S. C. "News & Courier", the Columbia, S. C. "The State", the Greenville, S. C. "The Greenville News", and the Georgetown, S. C. "The Georgetown Times", giving notice of the institution of this action and permitting any interested person not later than twenty (20) days following the date of publication to petition to intervene herein. Al-

though the twenty (20) day period has expired, no person has sought to intervene and an appropriate Order of Default has been entered.

None of the material facts are in issue. International has a large paper plant located in Georgetown County. At the present time, industrial waste originating at the plant is not being adequately treated before it is discharged into the Sampit River. In order to provide proper water pollution treatment facilities which will meet the legal requirements now in effect, International estimates that approximately Three Million Dollars ($3,000,000.00) will be required for construction cost. International and the County Board have negotiated a Loan Agreement wherein the County Board agrees to authorize the issuance of $3,000,000.00 Georgetown County Pollution Control Facility Revenue Bonds pursuant to the Bond Act, the proceeds of which will be used for the purpose of acquiring and constructing necessary water pollution control facilities for International's Georgetown plant. Under the terms of the Loan Agreement, International will be unconditionally obligated to repay the principal of, interest and premium, if any, on the said bonds as the same become due, and International will obligate itself to maintain and operate the pollution control facilities acquired from the bond proceeds. The Bond Act authorizes alternative arrangements by which the County may either (i) own and lease the pollution control facilities to International with an option to International to. purchase to the same for One Dollar ($1.00) when the bonds have been repaid or (ii) provide that the pollution control facilities when acquired and constructed will become the absolute property of International, in which latter event the County will have no ownership interest therein nor any lien thereon to secure the obligations of International under the Loan Agreement. In the instant case, the County Board and International have agreed that International will own the pollution control facilities when the same are acquired and constructed.

In addition to the Loan Agreement, the County Board proposes to enter into a Trust Indenture with a bank yet to be named pursuant to which the proposed revenue bonds will be issued and wherein the terms and provisions of the bonds will be set forth.

A hearing on the merits was held before me at my Chambers, at the Charleston County Courthouse on July 16, 1971, the Resident Judge of the Fifteenth Judicial Circuit being out of the country. All parties were represented at the hearing except the Defendant, Daniel R. McLeod, who was given due notice thereof. A draft copy of the Loan Agreement was introduced by consent and the issues were argued.

I find that the Bond Act is valid and constitutional in all respects and that the County Board is fully authorized pursuant to the provisions thereof to enter into the Loan Agreement with International and to issue the proposed $3,000,000.00 Georgetown County Pollution Control Facility Revenue Bonds.

The Bond Act authorizes any of the several counties of the State by its governing body and any incorporated municipality of the State by its governing body (without any action required by the governing body of the county wherein the incorporated municipality is located) to issue revenue bonds to finance the cost of air or water pollution control facilities to be used by any industry as defined therein, and in connection therewith the several counties and the several incorporated municipalities of the State are authorized to enter into agreements with an industry providing for the construction, operation, maintenance and improvement of pollution control facilities and prescribing the terms and conditions of the payments to be made by the industry to meet the payments that shall become due on the bonds. The Bond Act specifically states that the bonds issued pursuant thereto shall be limited obligations of the county or incorporated municipality, as the case may be, payable solely out of the moneys to be paid by the industry pursuant to a loan

agreement and no such bond or interest coupon shall ever constitute or give rise to a pecuniary liability of the county or incorporated municipality or a charge against its general credit or taxing powers. The Bond Act prescribes that prior to the issuance of any bonds pursuant thereto, the issuing county or incorporated municipality shall first obtain from the Pollution Control Authority of South Carolina, established by Act No. 1157 of 1970, as amended from time to time, a finding by the Authority that the proposed pollution control facilities are necessary and that the design thereof will result in the elimination, mitigation and prevention of air or water pollution.

The Bond Act also requires the issuing county or incorporated municipality prior to the issuance of any bonds pursuant thereto to file its petition with the State Budget and Control Board of South Carolina setting forth a brief description of the proposed pollution control facilities, a statement of the action taken in connection therewith by the Pollution Control Authority, a reasonable estimate of the cost and a general summary of the terms and conditions of the loan agreement. Upon the filing of such a petition, the Bond Act requires the State Board to make such investigation as it deems advisable and the State Board is authorized to approve the proposed pollution control facilities if it finds that they are intended to promote the purposes of the Bond Act and may be reasonably anticipated to effect such result. Notice of the State Board's approval must then be published at least once in a newspaper having general circulation in the county where the proposed pollution control facilities are to be located and no person may challenge the validity of such approval except by an action *de novo* instituted within twenty days after the publication of such notice in the county where the proposed pollution control facilities are to be located.

Many of the questions raised by the Plaintiff are resolved by the determination of whether bonds issued pursuant to the Bond Act constitute bonded debt of the issuing county

or incorporated municipality and whether the issuance of such bonds and the acquisition and construction of pollution control facilities with their proceeds to be owned by a private person or corporation or purchased by a private person or corporation for $1.00 when the bonds have been repaid constitute the use of public credit or public property in violation of the State and Federal Constitutions. In particular, the Plaintiff contends that the issuance of bonds by incorporated municipalities or counties pursuant to the Bond Act would be for a private rather than a corporate purpose in violation of Article X, Section 5 of the South Carolina Constitution; would, in the instant case, violate the constitutional debt limit imposed upon Georgetown County by Article X, Section 5 of the South Carolina Constitution; would result in the issuance of bonds by a county for a purpose not enumerated in Article X, Section 6 of the South Carolina Constitution; would constitute a pledge and loan of the credit of a county or incorporated municipality for the benefit of a private corporation in violation of Article X, Section 6 of the South Carolina Constitution; would permit the use of public credit to acquire pollution control facilities to be owned exclusively by a private corporation in violation of Article X, Section 6 of the South Carolina Constitution; would permit the use of public credit to acquire pollution control facilities which may be subjected to a forecloseable mortgage lien in default of which the facilities would be sold to pay off the bonds resulting in the use of public property for the benefit of a private corporation in violation of Article X, Section 6 and Article III, Section 31 of the South Carolina Constitution; would deprive the Plaintiff in the instant case of property without due process of law in violation of the State and Federal Constitutions by permitting the expenditure of public moneys for the benefit of a private corporation; would authorize the disposition of pollution control facilities acquired with bond proceeds for a nominal or no consideration in violation of the public policy of the State requiring public property to be sold to the best

advantage of the taxpayers and in particular, in violation of Article III, Section 31 and Article I, Section 5 of the South Carolina Constitution; and would permit incorporated municipalities to incur bonded debt without a freeholder's petition and the favorable result of an election in violation of Article III, Section 13 and Article VIII, Section 7 of the South Carolina Constitution.

The proposed revenue bonds are payable solely from the revenues derived under the loan agreement and, therefore, are not "bonded" debt within the meaning of any provision of the State Constitution. *Elliott v. McNair*, 250 S. C. 75, 156 S. E. (2d) 421 (1967). We next turn to the question of a public purpose.

The purpose of the Bond Act is to provide assistance to industries in the elimination, mitigation or prevention of air and water pollution. The Industrial Revenue Bond Act (Act No. 103 of 1967) which was sustained by the South Carolina Supreme Court in the case of *Elliott v. McNair, supra,* authorizes counties to issue industrial revenue bonds similar to the bonds authorized by the Bond Act but for the purpose of financing construction or improvement of an industrial project as defined therein to be leased to a private user who would pay rentals adequate to repay the bonds. Included by definition in such a project are "water, sewage treatment and disposal facilities, air pollution control facilities . . ." Thus, the County Board could finance the proposed water pollution control facilities as a part of a project through the issuance of industrial revenue bonds. The Plaintiff contends, however, that the holding in the *Elliott* case does not apply here on the question of public purposes, but that the court held that the Industrial Revenue Bond Act authorized bonds for a public purpose on the grounds that it was designed to improve the industrial climate in order to provide for the welfare and prosperity of its inhabitants through the stimulation and promotion of industrial development and the creation of jobs. The Plaintiff contends that, in the instant case, there will be no additional employment resulting from

the construction of the proposed water pollution control facilities and that the issuance of the proposed bonds would be entirely for the benefit of International rather than for any public purpose. In particular, the Plaintiff contends that International has no option in the matter but must construct the proposed water pollution control facilities in order to comply with State law.

A review of the Industrial Revenue Bond Act, however, shows that it empowers a county to acquire and in connection with such acquisition to enlarge, improve and expand, whether by construction, purchase, gift or lease, one or more Projects as defined therein. Consequently, if the County Board and International undertook to finance the proposed water pollution control facilities by means of the Industrial Revenue Bond Act, they could do so and the industrial revenue bonds issued for that purpose would be for a valid publice purpose in that it would induce International to remain in Georgetown County and thus continue to utilize and employ the manpower, agricultural products and natural resources of the State. Obviously a proper public purpose under the Industrial Revenue Bond Act would also be a proper public purpose for which bonds can be issued pursuant to the Bond Act.

But the bonds now being proposed also have another ██ proper public purpose. The legislature has found that the elimination, mitigation or prevention of air and water pollution by itself constitutes a proper public purpose. The question of public purpose is primarily for the legislature, and the court will not interfere unless the determination by that body is clearly wrong. However, in the instant case we agree that the legislative determination is entirely correct. In *Opinion of Justices*, Mass., 268 N. E. (2d) 149, the Justices of the Supreme Judicial Court of Massachusetts, while striking on other grounds a statute authorizing the issuance of bonds by the Commonwealth of Massachusetts and the use of proceeds thereof to make loans to private

individuals for construction of water pollution waste treatment facilities, held as follows:

"In the instant situation it is clear that the primary purpose of [the Act] is the abatement of industrial water pollution. Such pollution is obviously a danger to the public health, safety and welfare; and a program for its abatement without impairment of local industrial development involves an important public purpose . . . Any benefit to recipients of loans under [the Act] would be 'incidental' to the accomplishment of the primary purpose of [the Act]."

The court concluded that the proposed use of public funds under the Massachusetts act would be for a public purpose even though it may result in conferring a benefit upon or in paying money to private individuals. In the case of *Knight v. West Alabama Environmental Improvement Authority, et al.,* 287 Ala. 15, 246 So. (2d) 903 (1971), the Supreme Court of Alabama sustained the constitutionality of legislation authorizing the establishment of public corporations to issue revenue bonds and to construct, acquire and lease equipment, facilities and systems in connection with overall purposes for combatting ecological damage. The Alabama act did not involve issuance of bonds by the state, a county or a municipality but rather by the authorities created thereunder. Nevertheless, inasmuch as the issuing parties would be public corporations, the bonds must meet the public purpose test and on that question, a proper public purpose seems to have been conceded inasmuch as no contention was made that the bonds would be issued for other than a public purpose.

Finally, in *Fickes v. Missoula County,* the Supreme Court of Montana, Mont., 470 P. (2d) 287 (1970), interpreted the Montana Industrial Development Projects Act to include air and water pollution control devices within the definition of a project eligible for financing thereunder; again, apparently without any question being raised that such device would not constitute a proper public purpose.

Having come to the conclusion that the bonds would not constitute bonded debt within the meaning of the South Carolina Constitution and would be issued for a proper public purpose, the remaining questions outlined hereinabove are concluded adversely to the Plaintiff's contention under the authority of *Elliott v. McNair, supra.*

The Plaintiff contends that the Bond Act constitutes a denial of equal protection and due process guaranteed by the State and Federal Constitutions in respect to such persons or corporations as shall not undertake to avail themselves of the benefits of the Bond Act or whose application for the issuance of bonds is denied either by the county or incorporated municipality involved or by the State Budget and Control Board. The South Carolina Supreme Court held in the *Elliott* case that the General Assembly had the right to make reasonable classifications of property and persons for public purposes and sustained the Industrial Revenue Bonds Act against the similar attack that it would afford a special privilege to a private corporation which could borrow money at a lesser rate of interest under the Industrial Revenue Bond Act and the holding in the *Elliott* case is equally applicable and is controlling here.

The *Elliott* case is likewise controlling adverse to the Plaintiff's contention that the delegation of powers to the State Budget and Control Board violates the provisions of Article II, Section 5 and Article I, Section 14 of the South Carolina Constitution on the alleged grounds that dual office holding results and executive functions are devolved upon members of the General Assembly and to the Plaintiff's contention that the twenty day statute of limitation contained in Section 14 of the Bond Act is so short that it deprives the Plaintiff equal protection and due process.

The Plaintiff contends that the Bond Act is too vague and cannot be implemented for the reason that it does not contain any definite standards to deter-

mine what constitutes air or water pollution which may be remedied through the issuance of bonds pursuant to the Bond Act. This contention has no merit. Section 7 of the Bond Act prescribes that before the issuance of any bonds pursuant thereto, a finding by the Pollution Control Authority that the proposed pollution control facilities are necessary and will result in the elimination, mitigation and prevention of air and water pollution. The Pollution Control Authority was established by Act No. 1157 of 1970 and authorized to abate, control and prevent pollution as defined therein so as to maintain reasonable standards of purity of the air and water resources of the State consistent with the public health, safety and welfare of its citizens, maximum employment, the industrial development and protection of terrestrial and marine flora and fauna, and the protection of physical property and other resources. To that end, it is given authority after public hearings to adopt standards and to determine what qualities and properties of water and air shall indicate a polluted condition, and Act No. 1157 of 1970 enumerates what the standards for water adopted pursuant thereto by the Pollution Control Authority may prescribe and the pertinent facts to be considered in adopting the classifications of waters and standards of purity and quality.

Likewise, there is no merit in the Plaintiff's contention that the Act fails to establish standards by which the State Budget and Control Board is guided in approving bonds to be issued thereunder, and the standards by which the State Board must act are more fully set forth in the Bond Act and hereinabove in this Decree.

The Bond Act requires the approval by two State agencies, viz., the Pollution Control Authority and the State Budget and Control Board; but requires the publication of a notice of the approval only in respect of the approval by the State Budget and Control Board. Unless an action is instituted within twenty days after the publication of such notice, any person is barred from challenging the validity

of the State Budget and Control Board's approval. The Plaintiff contends that the statute of limitation is unconstitutional as an indirect attempt to deprive him of an opportunity to contest the decision of the Pollution Control Authority with regard to the necessity and the adequacy of the facilities approved. A careful examination of the Bond Act shows that this contention is not well founded. The statute of limitation bars a challenge of the State Board's approval and inasmuch as the State Board's action follows and is based on the action previously taken by the Pollution Control Authority, the statute of limitation likewise bars a challenge to the previous action by the Pollution Control Authority. Indeed, the Bond Act requires that the petition to the State Board from the county or the incorporated municipality shall set forth, *inter alia,* "a statement setting forth the action taken by the Pollution Control Authority in connection with the pollution control facilities . . .". Any interested party is therefore given an adequate opportunity to contest the Pollution Control Authority's approval by instituting an action within the said twenty day period challenging the validity of the State Board's approval on the grounds of any challenge he may have to the Pollution Control Authority's findings.