22132

The SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, an Agency of the State of South Carolina, Respondent, v. Steve SUMMERS, Treasurer of Orangeburg County; The South Carolina Tax Commission; and Citizens & Southern National Bank of South Carolina, as Trustee and the South Carolina National Bank, as Trustee, Apellants & Respondents.

(318 S. E. (2d) 113)

Supreme Court

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Atty. Gen. Ray N. Stevens,* Columbia; *Wayne M. Creech,* and *John H. Tiencken, Jr.,* of Moncks Corner, *Harris A. Marshall, Jr.,* Orangeburg; *Henry B. Richardson, Jr.,* Sumter; and *Furman R. Gressette,* St. Matthews, *all for appellants.*

*Robert W. Dibble, Jr., Robert E. Stepp* and *Scott Y. Barnes,* of *McNair, Glenn, Konduros, Singletary, Porter & Dibble,* Columbia; and *C. H. McGlothlin, Jr.,* Moncks Corner, *all for respondents.*

Heard April 16, 1984.

Decided June 27, 1984.

Moss, Acting Justice:

This is an ad valorem tax case. Appellants, Steve Summers, et al., contend the trial court erroneously determined certain real property owned by respondent, South Carolina Public Service Authority, and leased to individuals or private entities was exempt from ad valorem property taxation by: (1) Article X, § 3 of the South Carolina Constitution; (2) S. C. Code Ann. § 58-31-80 (1976); and (3) the contract clauses of

both the United States and South Carolina Constitutions. We disagree and affirm.

The Authority was created by Act No. 887 of 1934, presently codified in Title 58, Chapter 31, Code of Laws of South Carolina, 1976. The constitutionality of this enabling legislation was upheld in *Clarke v. South Carolina Public Service Authority*, 177 S. C. 427, 181 S. E. 481 (1935). Section 58-31-80 of the Code, a part of the original legislation, provides:

> It is hereby found and declared that the project authorized by the Chapter is ... a public purpose, and being a corporation owned completely by the people of the State and operated by the Authority for the benefit of all people of the State, the Public Service Authority shall be required to pay no taxes or assessments upon any of the property acquired by it for this project or upon its activities in the operation and maintenance thereof. ...

Notwithstanding this legislatively granted tax exemption, the tax assessors of Berkeley, Calhoun, Clarendon, Orangeburg and Sumter Counties, acting in concert with and under the control of the South Carolina Tax Commission, assessed certain real property of the Authority located within their jurisdictions for tax years 1979 and 1980. The Authority paid the taxes under protest and instituted this action to recover them pursuant to § 12-47-220 of the Code.

Article X, § 3 of the South Carolina Constitution of 1895, as amended in 1977, provides in pertinent part:

> There shall be exempt from ad valorem taxation: (a) all property of the state, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for public purposes. ...

Appellants assert the property involved in this case is not used exclusively for public purposes and is therefore subject to taxation. We disagree. The Authority's enabling legislation includes a declaration by the General Assembly that the project authorized by Chapter 31 of Title 58 is a public purpose. These legislative pronouncements are entitled to great weight. In *Elliott v. McNair*, 250 S. C. 75, 156 S. E. (2d) 421 (1967) we held:

[t]he question of whether an act is for a public purpose is primarily one for the Legislature, and this Court will not interfere unless the determination by that body is clearly wrong.

See also, State, ex rel. McLeod v. Riley, 276 S. C. 323, 324, 278 S. E. (2d) 612 (1981); Bauer v. South Carolina Housing Authority, 271 S. C. 219, 246 S. E. (2d) 869 (1978).

Appellants next claim real property owned by the Authority but leased to private persons or entities is not used "exclusively for public purposes" within the meaning of Article X, § 3. We disagree.

The property consists primarily of land surrounding Lakes Marion and Moultrie. This land has been divided into lots and leased to private persons for residential and commercial use. Some of the property is leased for agricultural purposes. The trial court concluded: (1) this property serves a public purpose by providing access to Lakes Marion and Moultrie for the general public; (2) the commercial leases provide the support facilities necessary to increase the public enjoyment of the lakes; and (3) the agricultural land is used to produce crops and for public hunting.

These findings are not directly disputed by appellants, who instead focus on the private benefit conferred upon the individual lessees of the property by virtue of the lease transaction itself. "Public purpose is not easily defined. It is a fluid concept which changes with time, place, population, economy and countless other circumstances." Caldwell v. McMillan, 224 S. C. 150, 77 S. E. (2d) 798 (1953). In recent decisions, we held ". . . courts have, as a rule, been reluctant to attempt to define public purpose as contrasted with a private purpose, but have generally left each case to be determined on its own peculiar circumstances." Byrd v. County of Florence, 315 S. E. (2d) 804 (S. C. 1984).

A case by case system of determination, however, does not create a vacuum for the consideration of the issue presented by the instant case. Several decisions of this court have examined lease transactions to determine whether a public purpose is served. The earliest of these is State v. City of Columbia, 115 S. C. 108, 104 S. E. 337 (1920), where the Columbia Opera House was held to be used exclusively for public purposes by

the City of Columbia, even though it was occasionally leased to private persons who produced "theatrical, musical and other entertainments" to which the public was admitted for a fee. 104 S. E. at 337.

More recently, this issue was examined in *Charleston County Aviation Authority v. Wasson*, 277 S. C. 480, 289 S. E. (2d) 416 (1982), and *South Carolina Farm Bureau Marketing Association v. South Carolina State Ports Authority*, 278 S. C. 198, 293 S. E. (2d) 854 (1982). In *Charleston County Aviation Authority*, we held that property of the Aviation Authority, which was leased to certain private concessionaires, was used exclusively for public purposes notwithstanding the private benefit conferred by the lease. In the *Ports Authority* case, we determined a grain elevator owned by the Ports Authority and leased to a private entity for, operation at a profit was used for a public purpose.

There is a consistency in these decisions which goes beyond the result reached in each. The underlying rationale was perhaps best expressed in *City of Columbia, supra:*

> The theatre was not built, nor has it been used for the purpose of raising revenue, but to fill a public need. The leasing of it was merely an expedient way of giving effect to the purpose, and the revenue merely an incident of it.

104 S. E. at 338.

This language, which we cited favorably in *Charleston County Aviation Authority, supra,* focuses on the critical distinction between the *purpose* for which property is used and the *method* of accomplishing that purpose. In each of the cases involving the leasing of property in this context, the governmental agency involved had as its purpose an objective designed to promote "the public health, safety, morals, general welfare, security, prosperity [or]... contentment of all the inhabitants or residents, or at least a substantial part thereof." *Anderson v. Baehr*, 265 S. C. 153, 217 S. E. (2d) 43 at 47. The *method* chosen in each of these cases to accomplish the purpose was to lease real property owned by the agency to a private person or entity who then became, in effect, an instrumentality of the government agency for the accomplishment of purpose.

The decisions hold the public character of an agency's purpose is not diminished or altered by the nature of the

transaction used to accomplish it. Were that the case, no leasing transaction could ever be used to accomplish a legitimate public goal. Private benefit to the lessee is always present. Where the purpose is clearly public in nature, we have consistently held this "incidental" private benefit does not convert the public purpose to a private purpose. *South Carolina State Ports Authority, supra,* 293 S. E. (2d) at 857. *See also, Taylor v. Davenport,* 316 S. E. (2d) 389 (S. C. 1984).

When the property at issue in this litigation is examined in this context, it is apparent the trial court correctly ruled it was used exclusively for public purposes. The purpose of the Authority was to increase access to the lakes by the public. To accomplish this, it chose to lease land to private persons who would bear the cost of constructing and maintaining homes and commercial facilities thereon. The residences provide a base population necessary to attract commercial facilities such as restaurants, boat landings, and bait and tackle shops, which in turn attract visitors to the lakes. Many of the residences are available for short term rental on the secondary market. The fact that the individual lessees of the property benefit by virtue of the transaction does not affect its public purpose.

The requirements of Article X, § 3 of the Constitution are satisfied with respect to this property and it is therefore constitutionally exempt from taxation.

In addition to the exemption afforded by Article X, § 3 ■ of the Constitution, § 58-31-80 of the Code also unambiguously exempts respondent's property from ad valorem taxes. As noted above, this exemption has been upheld against constitutional attack. *Clarke v. South Carolina Public Service Authority, supra.* In *Clarke* we noted "[i]n the matter of taxation the Legislature has full power in the absence of some constitutional provision." 181 S. E. at 487. Appellants assert the legislative grant of tax exempt status to the Authority violates the provisions of existing Article X and its predecessor, provisions in effect in 1934.

There is no conflict between the legislatively granted tax exemption and the existing constitution as we have discussed above. The constitutional provisions in effect in 1934 were thoroughly examined in *Clarke* where it was expressly held that the Authority's enabling legislation, specifically including the tax exemption under review here, violated no provi-

sion of the South Carolina Constitution then in effect. 181 S. E. at 488.

The tax exemption granted by the General Assembly is a valid exercise of legislative power which conflicts with no provision of the Constitution. It is applicable to all property of the Authority used in connection with any of the powers or purposes encompassed by Chapter 31 of Title 58 of the Code. Those powers and purposes specifically comprehend the residential and commercial leasing programs challenged by appellants herein. See § 58-31-100(1). The property is thus exempt under § 58-31-80 of the Code.

The trial court has also held that the imposition of ad valorem property taxes on property of the Authority violated the contract clause of the United States Constitution, Article I, § 10, and its counterpart contained in Article I, § 4 of the South Carolina Constitution, which prohibit the passage of any law which impairs pre-existing contractual obligations.

The State of South Carolina has contracted with the Authority's bondholders in § 58-31-30 that:

> The State of South Carolina does hereby pledge to and agree with any person, firm or corporation, the government of the United States and any corporation or agency created, designated or established by the United States, subscribing to or acquiring the notes, bonds, evidence of indebtedness or other obligations to be issued by the Public Service Authority for the construction of any project, that the State will not alter or limit the rights hereby vested in the Public Service Authority until the said notes, bonds, evidence of indebtedness or other obligations, together with the interest thereon, are fully met and discharged. . . .

This language creates a contract protected by the contract clause, as the bonds themselves constitute a contract between the South Carolina Public Service Authority and its bondholders. The bonds refer to and incorporate the covenants made by the State in § 58-31-20.

The tax exemption granted the Authority is an important security provision to the bondholders, which may not be altered or repealed. The imposition of property taxes clearly

impairs this security provision as well as the State's covenant not to alter any rights of the Authority, and is in clear contravention of Article I, § 10 of the United States Constitution. *United States Trust Co. of New York v. New Jersey*, 431 U. S. 1, 97 S. Ct. 1505, 52 L. Ed. (2d) (1977).

The Attorney General has recognized this principle. Op. No. 1905 of the Attorney General, dated September 16, 1965, at 65 Op. Atty. Gen., p. 192 states:

> The provisions of the statute pursuant to which the S. C. Public Service Authority was created preclude taxation of the Authority by the State and political subdivisions until provision is made for the protection of purchasers of the Authority's obligations.

Appellants nevertheless argue the provisions of Article X, § 3, as amended in 1978, repealed all exemptions not specifically provided for or authorized by Article X. The contract clause protects against this type of repeal. *United States Trust Co., supra.* A legislative act which creates a contract may not be impaired or repealed by a subsequent constitutional amendment. *Columbia Water Power Co. v. Campbell,* 75 S. C. 34, 54 S. E. 833 (1906).

For these reasons the judgment of the trial court is affirmed in all respects.

Affirmed.

LITTLEJOHN, C. J., and NESS and GREGORY, JJ., concur.

HARWELL, J., not participating.