23243

William J. QUIRK, Appellant v. Governor Carroll A. CAMPBELL, The South Carolina Tax Commission, Richland County and Union Camp Corporation, Respondents.

(394 S.E. (2d) 320)

Supreme Court

*Belton T. Zeigler* of *Lewis, Babcock, Pleicones & Hawkins,* Columbia, *for appellant.*

*William C. Hubbard, George B. Wolfe* and *Arthur L. Coleman* all of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent Governor Carroll A. Campbell.*

*Chief Deputy Atty. Gen. Joe L. Allen, Jr.* and *Asst. Atty. Gen. Ray N. Stevens,* Columbia, *for respondent South Carolina Tax Com'n.*

*Joseph Henry* of *Richland County Attorney's Office,* Columbia, *for respondent Richland County.*

*Robert W. Dibble, Jr., Jane W. Trinkley* and *Benjamin E. Nicholson, V.,* all of the *McNair Law Firm, P.A.,* Columbia, *for respondent Union Camp Corp.*

Heard June 5, 1990.

Decided July 23, 1990.

*Per Curiam:*

This is a taxpayer suit challenging the constitutionality of S.C. Code Ann. § 4-29-67 (Supp. 1989), an amendment to the Industrial Revenue Bond Act (Act)[1] allowing a negotiated "fee in lieu of taxes" for projects involving an initial investment of at least $85 million. The Circuit Court upheld the amendment.

We affirm.

# I. BACKGROUND

## A. THE INDUSTRIAL REVENUE BOND ACT

The Act authorizes counties and municipalities to sell or lease certain manufacturing and commercial projects to a qualifying industry, financed by issuance of bonds payable

---

[1] S.C. Code Ann. §§ 4-29-10 to -150 (1986).

from project revenues. Prior to 1988, all project leases had to contain a provision requiring the industry "to make payments . . . in lieu of taxes, in such amounts as would result from taxes levied on the project . . . if the project were owned by the industry . . . ." S.C. Code Ann. § 4-29-60 (1986).

In 1988, the Act was amended[2] to add § 4-29-67, providing an alternate method of paying the fee in lieu of taxes for industries investing at least $85 million. Specifically, § 4-29-67 permits counties and municipalities to negotiate the fee, subject to certain requirements set out in the statute.

The negotiated fee provision was enacted in response to the perceived negative effect that this State's property taxes[3] have upon recruitment of large capital-intensive businesses. It is intended to induce these large industries to make new or expanded investments in South Carolina.

## B. THE UNION CAMP EXPANSION

On June 28, 1988, Respondents Richland County and Union Camp Corporation entered into an Inducement Agreement which utilized the negotiated fee in lieu of taxes in connection with a proposed $700 million expansion of existing manufacturing facilities. The negotiated fee was a "decided factor" in Union Camp's decision to undertake the expansion in Richland County.

Under the Agreement, title to the property will be conveyed to Richland County at the price paid by Union Camp. The County will then issue approximately $500 million in industrial revenue bonds, the proceeds of which will finance the expansion. The County will lease the plant and equipment to Union Camp at a rental sufficient to pay principal and interest on the bonds. At the end of the lease term, Union Camp will have the option to purchase the project for $1.

With respect to the payment in lieu of taxes, the Agreement provides:

> The lease agreement shall contain a provision requiring the Company to make payments in lieu of taxes. Such

---

[2] Act No. 487, S.C. Acts 4079, amended by Act No. 173, 1989 S.C. Acts 571, now codified as Section 67 of Title 4, Chapter 29.

[3] A South Carolina Tax Commission study indicates that South Carolina's property taxes are second highest among twelve southeastern states.

payments shall be made for a term of twenty years in amounts not less than the ad valorem taxes that would be due on the Project if it were not owned by the County, but using an assessment ratio of 6% and the millage rate in effect on the date when the Bonds are executed and delivered.

This provision accords with the requirements of § 4-29-67.

When completed, the expansion will create 267 new jobs and add an estimated $7.5 million annually to Union Camp's payroll. The State Development Board projects that an additional 400 jobs and $12.8 million in annual income will be added to the local economy as a result of secondary business services.

## C. THIS LITIGATION

Appellant William J. Quirk, a resident and taxpayer of Richland County, commenced this action seeking to have § 4-29-67 declared unconstitutional. He alleges the statute violates uniformity provisions in Article X of the South Carolina Constitution[4] and the equal protection clauses of the South Carolina and United States Constitutions.

## II. ARTICLE X

Respondents contend that § 4-29-67 does not violate Article X because the property which is the subject of the negotiated fee is exempt from *ad valorem* taxation under Article X, § 3(a). We agree.

Article X, § 3(a), provides a property tax exemption for "all property of the State, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for public purposes." Since under the plan here the property will be owned by the County, it is necessary to determine whether the property is to be used exclusively for "public purposes." In making this determination, we follow established precedent.

---

[4] Specifically, section 1(1), requiring manufacturing property to be assessed at the rate of 10½% of fair market value; section 3(g), granting new manufacturing establishments five year exemptions from county taxes; section 4, mandating one assessment for all taxes; section 6, requiring uniform property tax levies; and section 7(b), requiring political subdivisions to levy taxes to pay deficiencies in annual budgets.

On three previous occasions this Court has held that property leased by a governmental entity to private businesses was used exclusively for public purposes and, therefore, exempt from taxation under § 3(a) of Article X. *Charleston County Aviation Authority v. Wasson*, 277 S.C. 480, 289 S.E. (2d) 416 (1982) (property leased to airlines, car rental companies, operators of restaurant, gift shop, and parking lot in connection with county airport); *Taylor v. Davenport*, 281 S.C. 497, 316 S.E. (2d) 389 (1984) (dam and hydroelectric plant); *South Carolina Public Service Authority v. Summers*, 282 S.C. 148, 318 S.E. (2d) 113, 114 (1984) (land surrounding lake leased for residential, commercial, and agricultural use). These decisions make clear that it is the *purpose* for which property is used, not the *method* of accomplishment, which determines whether use is exclusively for public purposes, notwithstanding incidental benefit will accrue to a particular private business.

Moreover, numerous decisions of this Court have addressed "public purpose" requirements relating to other sections of our Constitution. *See cases collected in Nichols v. South Carolina Research Authority*, 290 S.C. 415, 351 S.E. (2d) 155 (1986). Of these, *Elliott v. McNair*, 250 S.C. 75, 156 S.E. (2d) 421 (1967) and *Nichols, supra*, are relevant to our decision here.

In *Elliott*, this Court upheld the Act's constitutionality shortly after its passage in 1967. Rejecting arguments that the Act violated Article I, § 5 (now Article I, § 3) of the Constitution, we stated:

> We conclude that the Act . . . was for a public purpose and represents merely an expansion of the established legislative policy of improving the industrial climate of South Carolina in order to provide for the welfare and prosperity of its inhabitants and the mere fact that special benefits result by reason of its existence does not destroy the public purpose which promoted its enactment. *Elliott* at 89, 156 S.E. (2d) at 428.

Subsequently, in *Nichols* this Court held, conclusively, that industrial development is a valid public purpose.

Finally, we view *Elliott* as dispositive of the question presented. There, the "fee in lieu" provision of § 4-29-60 was

held not to violate then Article X, § 4, of the Constitution, predecessor to § 3(a) of current Article X.[5] We stated that "Article X, Scction 4, has been literally followed inasmuch as the property is not subject to *ad valorem* taxes." *Elliott* at 93, 156 S.E. (2d) at 431.[6] *See also Powell v. Chapman*, 260 S.C. 516, 197 S.E. (2d) 287 (1973) (fee in lieu of taxes is "tax equivalent").

All these considerations support our conclusion that property subject to the negotiated fee is used exclusively for public purposes. The transaction here serves the public purpose of promoting industrial development, as established in *Elliott* and reaffirmed in *Nichols*.

## III. EQUAL PROTECTION

Appellant contends § 4-29-67 violates equal protection in that: (1) only those industries investing $85 million may take advantage of the negotiated fee; and (2) from those who qualify, different results may obtain in the negotiation process. We disagree.

"[I]t has repeatedly been held and appears to be entirely settled that a statute which encourages the location within the State of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the Equal Protection Clause of the Fourteenth Amendment." *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528, 79 S. Ct. 437, 441, 3 L. Ed. (2d) 480, 485 (1959). "It is elementary that if the classification bears a reasonable relation to the legislative purpose sought to be effected, and if the constitutents of each class are treated alike under similar circumstances and conditions, . . . equal protection . . . is fully complied with." *Duke Power Co. v. Bell*, 156 S.C. 299, 318, 152 S.E. 865, 872 (1930). *See also Morgan v. Watts*, 255 S.C. 212, 178 S.E. (2d) 147 (1970).

The classification scheme created by § 4-29-67 is rationally related to its legislative purpose of attracting large capital-intensive industries to the State. All such businesses are

---

[5] Article X was amended in its entirety in 1977, ten years after the *Elliott* decision.

[6] We disagree with Appellant's contention that the 1977 amendment of Article X negates our holding in *Elliott*. Both the old and new constitutional provisions exempt county property "used exclusively for public purposes."

granted the opportunity to negotiate for fees in lieu of taxes, provided the requirements of the Act are met. Accordingly, the statute satisfies the mandates of equal protection. *See also Harper v. Schooler,* 258 S.C. 486, 189 S.E. (2d) 284 (1972).

## IV. CONCLUSION

Section 4-29-67 violates neither Article X of the South Carolina Constitution nor the equal protection clauses of the State and Federal Constitutions. Judgment of the Circuit Court is affirmed.

Affirmed.