23553

Catherine L. THAYER d/b/a C & R Marketing, Appellant v. SOUTH CAR-
OLINA TAX COMMISSION, S. Hunter Howard, Jr., T. R. McConnell,
and A. Crawford Clarkson, Jr., Respondents, and Office of Attorney Gen-
eral, Intervenor-Respondent.

(413 S.E. (2d) 810)

Supreme Court

*Arnold S. Goodstein* and *Mary Ann Marwick, Goodstein & Goodstein,* and *Ann M. Priest,* Summerville, *for appellant.*

*Chief Deputy Atty. Gen. Joe L. Allen, Jr.* and *Deputy Atty. Gen. Ray N. Stevens,* Columbia, *for respondents.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Edwin E. Evans,* and *Staff Atty. Georgia L. Lewis,* Columbia, *for intervenor-respondent.*

*Gene M. Connell, Jr., Kelaher Bass & Connell,* Surfside Beach, *amicus curiae,* for *Myrtle Beach Area Chamber of Commerce.*

Heard Oct. 8, 1991; Decided Jan 13, 1992.

Reh. Den. Feb. 20, 1992.

*Per Curiam:*

Appellant Catherine L. Thayer d/b/a/ C & R Marketing was assessed a use tax as a consequence of her purchasing printed advertising material outside the State of South Carolina for distribution within the state. The issue is whether the trial court erred in upholding the constitutionality of the sales and use tax exemption granted to newspapers and religious publications pursuant to S.C. Code Ann. § 12-35-550(7) (1976). We affirm the trial judge's ruling that the newspaper exemption is constitutional under the free press clause. However, we find the exemption granted to religious publications offends the establishment clause of the First Amendment, and, accordingly, reverse this portion of the trial court's ruling. We affirm the trial court's finding that appellant remains liable for use tax assessed against her.

## I. FACTS

The *Real Estate Book* is a collection of advertisements placed by real estate brokers to publicize homes available for purchase. The publication is printed in Georgia and delivered to appellant for use in South Carolina. Appellant distributes the *Real Estate Book* to the public free of charge in grocery stores, convenience stores, and similar locations.

Respondent South Carolina Tax Commission performed an audit of appellant's books for the period May 1, 1985 through December 31, 1988, and assessed a use tax of $39,727.80, plus

interest and penalties. Appellant appealed the assessment at the agency level. The South Carolina Tax Commission, after a hearing, found that appellant owed the use tax. Appellant paid one month's assessed use tax under protest and brought an action in circuit court, alleging that the exemption given to religious publications pursuant to S.C. Code Ann. § 12-35-550(7) (1976) (now codified at S.C. Code Ann. § 12-36-2120(8) (Supp. 1990)) violated the establishment clause of the First Amendment; that the exemption given to newspapers pursuant to S.C. Code Ann. § 12-35-550(7) (1976) (now codified at S.C. Code Ann. § 12-36-2120(8) (Supp. 1990)) violated the free press clause of the First Amendment; that the different treatment given to members of the press violated her right to substantive due process; and that classifying the press into different categories violated her right to equal protection. The trial court upheld the exemptions to newspapers and religious publications. He also held that even if the exemptions were unconstitutional, appellant would be entitled to no relief because the exemptions would be severable, and, once severed, would result in a use tax imposed on all publications previously exempted under S.C. Code Ann. § 12-35-550(7) (1976).

## II. DISCUSSION

A state historically levies a use tax in order to prevent evasion by retail purchases from outside the state which would avoid application of a sales tax. A use tax complements a sales tax by ensuring that the local use of an item purchased outside the state is taxed in the same amount it would be if it were purchased locally. *State v. Byrnes*, 219 S.C. 485, 517, 66 S. E. (2d) 33, 46 (1951).

### A. *Free Press Clause*

Appellant contends that S.C. Code Ann. § 12-35-550(7) (1976) imposes a differential tax in contravention of the free press clause by providing an exemption only for newspapers. We disagree and dispose of appellant's exception pursuant to *Leathers v. Medlock*, 499 U.S. —, 111 S. Ct. 1438, 113 L. Ed. (2d) 494 (1991) (differential taxation of speakers, even members of the press, does not implicate the First Amendment unless the tax is directed at, or presents the danger of, suppressing particular ideas).

## B. *Establishment Clause*

Appellant asserts that S.C. Code Ann. § 12-35-550(7) (1976) grants an exemption to religious publications in violation of the establishment clause of the First Amendment. We agree.

Section 12-35-550(7) provides that sales and use taxes are not collectible against the "gross proceeds of the sale of . . . religious publications, including the Holy Bible." "Religious publications" include:

> books, periodicals, pamphlets and other printed matter, which are devoted to man's relationship to Divinity; to reverence, worship, obedience and submission to mandates and precepts of supernatural or superior beings. To qualify as a religious publication, the publication must contain substantial reference to belief in the existence of superior beings exercising power over human beings by volitions, imposing rules of conduct, with future rewards and punishments.

27 S.C. Regs. 117-174.188 (1976).

Our determination of this question is controlled by *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 109 S. Ct. 890, 103 L. Ed. (2d) 1 (1989). In *Texas Monthly*, the United States Supreme Court held that an exemption granted to periodicals published or distributed by a "religious faith and that consist wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith," Tex. Tax Code Ann. § 151.312 (1982), violated the establishment clause. *Id.* at 5, 109 S. Ct. at 894, 103 L. Ed. (2d) at 7. Reading South Carolina's exemption and regulations together, we can discern no substantive difference between the statute at issue in *Texas Monthly* and section 12-35-550(7) is confined impermissibly to publications advancing the tenets of a religious faith.

To pass constitutional muster under an establishment clause challenge, a statute must possess a secular legislative purpose and not have as its primary effect the advancement or inhibition of religion. *Id.* at 9, 109 S. Ct. at 896, 103 L. Ed. (2d) at 9 (citing *Lemon v. Kurtzman*, 403 U.S.

602, 91 S. Ct. 2105, 29 L. Ed. (2d) 745 (1971).[1] We find section 12-35-550(7) as it relates to religious publications fails the identical prongs of the *Lemon* test that concerned the Court in *Texas Monthly.*

1. *Secular purpose.* Exemptions benefitting religion must be "warranted by some overarching secular purpose that justifies like benefits for nonreligious groups." *Id.* at 14 n. 4, 109 S. Ct. at 899 n. 4, 103 L. Ed. (2d) at 13 n. 4. Thus, any subsidy benefitting religious organizations must result from the natural inclusion of religion within the perimeter of a broad circle of nonsectarian groups also benefitting from the subsidy. These nonsectarian groups typically include charitable, scientific, professional, historical, and patriotic associations. *Cf. Walz v. Tax Commission,* 397 U.S. 664, 90 S. Ct. 1409, 25 L. Ed. (2d) 697 (1970). Tax exemptions benefitting a broad class of charitable, educational, religious, and like organizations further the legitimate legislative goal of encouraging groups to contribute "to the community's moral and intellectual diversity and encouraging . . . projects that advance the community's well-being and that would otherwise have to be funded by tax revenues or left undone." *Texas Monthly,* 489 U.S. at 12, 109 S. Ct. at 898, 103 L. Ed. (2d) at 11.

Respondents assert that a secular purpose may be implied if the exemption granted religious publications is viewed in conjunction with section 12-35-550(2), which grants an exemption for sales of textbooks used in elementary schools, high schools, and institutions of higher learning; section 12-35-550(29), which grants an exemption for sales of books to legally established, publicly supported state, county, and regional libraries open to the public without charge; and 12-35-550(7), which grants an exemption to general interest newspapers. Respondents contend that sections 12-35-550(2), (7), and (29) embrace a broad class receiving like benefits as required by *Texas Monthly.* We disagree.

Without commenting on the validity of the purposes for which the sales and use tax exemption was granted, we find that the Legislature granted a sales and use tax ex-

---

[1] *Lemon* also requires that a statute not give rise to excessive government entanglement with religion. We need not address the third prong of *Lemon* since we find that section 12-35-550(7) as it relates to religious publications fails the other two prongs of the *Lemon* test.

emption under sections 12-35-550(2) and (29) for the purpose of easing the financial burden on schools and public libraries. We further find that the Legislature granted an exemption to newspapers under section 12-35-550(7) to ensure that the state does not utilize taxation to suppress First Amendment rights of the press, particularly political speech. Sales and use tax exemptions granted for different purposes do not rescue from invalidation a tax exemption granted solely to religious publications. *Texas Monthly*, 489 U.S. at 14 n. 4, 109 S. Ct. at 899 n. 4, 103 L. Ed. (2d) at 13 n. 4. We find that S.C. Code Ann. § 12-35-550(7) (1976) as it relates to religious publications lacks a secular objective, as it does not provide an exemption for a broad class of nonsectarian groups as mandated by *Texas Monthly*.

2. *Primary effect.* A state may not place its power or prestige behind religion, whether it be a particular form of religion, or religion in general. *Id.* at 9, 109 S. Ct. at 896, 103 L. Ed. (2d) at 9. When it attempts to do so, it effectively endorses religion. A statute cannot stand when its primary effect is to endorse the communication of religious messages. *Id.* at 28, 109 S. Ct. at 907, 103 L. Ed. (2d) at 22.

Section 12-35-550(7) clearly singles out "religious proselytizing as an activity deserving of public assistance." *Id.* at 15 n. 5, 109 S. Ct. at 900 n. 5, 103 L. Ed. (2d) at 13 n. 5. We find that section 12-35-550(7) possesses the primary effect of advancing religion. Because it fails the first two prongs of the *Lemon* test, we hold that S.C. Code Ann. § 12-35-550(7) (1976) as it pertains to religious publications is unconstitutional.[2]

### C. *Severability*

Having determined that section 12-35-550(7) as it pertains to religious publications is unconstitutional, we must determine whether this portion of section 12-35-550(7) is severable from the rest of the statute. A statute may be constitutional and valid in part and unconstitutional and invalid in part. *Strom v. Amvets*, 280 S.C. 146, 311 S. E. (2d) 721

---

[2] We note that the free exercise clause of the First Amendment does not require a state to grant an exemption from its generally applicable sales and use tax for religious materials. *Jimmy Swaggart Ministries v. Board of Equalization*, 493 U.S. 378, 392, 110 S. Ct. 688, 697, 107 L. Ed. (2d) 796, 809 (1990).

(1984). The test for severability is whether the constitutional[3] portion of the statute remains "complete in itself, wholly independent of that which is rejected, and is of such a character as that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution. . . ." *Shumpert v. South Carolina Dept. of Highways*, — S.C. —, 409 S. E. (2d) 771 (1991) (citing *State v. Harper*, 251 S.C. 379, 162 S. E. (2d) 712 (1968).

Section 12-35-550 enumerates independent exemptions enacted for a variety of purposes. The legislature has added and deleted items from the exemption section from time to time.[4] We find the remaining exemptions are complete in themselves and that the legislature would have passed the remaining exemptions independently of section 12-35-550(7) as it pertains to religious publications. We conclude that the term "religious publications, including the Holy Bible" is severable from the remainder of the statute.

### D. *Remedy*

Appellant asserts that *McKesson v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S. Ct. 2238, 110 L. Ed. (2d) 17 (1990), mandates that her tax assessment be forgiven. She claims that any attempt to subject her to tax after an exemption is removed would deprive her of due process. We disagree. *McKesson* must be read in conjunction with its companion case, *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167, 110 S. Ct. 2323, 110 L. Ed. (2d) 148 (1990). The Court in *American Trucking* makes it clear that *McKesson* requires relief as a matter of federal law only when taxpayers involuntarily pay a tax that is unconstitutional under existing precedents. *McKesson* is inapplicable when, as here, taxpayers have been subjected to a constitutional tax. The fact that we have found section 12-35-550(7) as it pertains to religious publications to be unconstitutional does not ren-

---

[3] We do not intend by this analysis to imply that all the remaining portions of S.C. Code Ann. § 12-35-550 (1976) are constitutional. Although the sales and use tax exemption granted to many interests is suspect, its viability in relation to the other groups enumerated in section 12-35-550 is not before this Court. We therefore express no opinion as to the constitutionality of the remaining portions of either section 12-35-550 or section 12-36-2120.

[4] For example, S.C. Code Ann. § 12-36-2120(8) (Supp. 1990) now includes an exemption from sales tax granted to the South Carolina Department of Agriculture's "The Market Bulletin."

der appellant's tax burden unconstitutional. The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption. *John D. Hollingsworth on Wheels, Inc. v. Greenville County Treasurer*, 276 S.C. 314, 278 S.E. (2d) 340 (1981). Appellant was not entitled to an exemption in the past; nor is she entitled to an exemption now that we have severed that portion of section 12-35-550(7) relating to religious publications. This Court cannot create an exemption by reading something into the statute which the Legislature did not intend. *See Creech v. South Carolina Public Service Authority*, 200 S.C. 127, 146, 20 S.E. (2d) 645, 652 (1942).

In sum, we affirm the trial judge's order regarding appellant's free press clause argument. We reverse the trial court's order concerning appellant's establishment clause challenge and sever from S.C. Code Ann. § 12-35-550 (1976) that portion of the exemption which reads, "religious publications, including the Holy Bible." We affirm the trial court's finding that appellant is liable for the use tax assessed against her and hold that the South Carolina Tax Commission may collect the balance of use tax owed by appellant.

We find appellant's remaining exceptions regarding equal protection and due process challenges to the newspaper exemption portion of S.C. Code Ann. § 12-35-550(7) (1976) to be without merit. The order of the trial judge is

Affirmed in part and reversed in part.