588 S.E.2d 97

ED ROBINSON LAUNDRY AND DRY CLEANING, INC., et al., Appellants,

v.

SOUTH CAROLINA DEPARTMENT OF REVENUE and the State of South Carolina, Respondents.

No. 25731.

Supreme Court of South Carolina.

Heard May 14, 2003.

Decided Oct. 13, 2003.

Rehearing Denied Nov. 20, 2003.

A. Camden Lewis and Thomas A. Pendarvis, both of Lewis, Babcock & Hawkins, of Columbia; Gary W. Poliakoff, of

Poliakoff, Poole & Associates, of Spartanburg; R. Bryan Harwell, of Harwell, Ballenger, Barth & Hoefer, of Florence; and William J. Quirk, of the University of South Carolina School of Law, of Columbia, for appellants.

Attorney General Henry Dargan McMaster, of Columbia; Harry T. Cooper, Ronald W. Urban, Milton G. Kimpson and Leonard P. Odom, all of South Carolina Department of Revenue and Taxation, of Columbia, for respondents.

Justice BURNETT.

Ed Robinson Laundry and Dry Cleaning, Inc., ("Robinson") appeals the trial court's grant of summary judgment to the State. We affirm.

## FACTS

Robinson, a provider of dry cleaning and laundering services, brings this action alleging portions of the Sales and Use Tax Act (the "Act"), S.C.Code Ann. § 12–36–910 (1976) *et seq.*, violate the equal protection clauses of the United States and South Carolina Constitutions.[1]

## ISSUES

I.    Did the lower court err in holding the imposition of a sales tax on dry cleaning does not violate the equal protection clause?

II.   Did the lower court err in holding the number and character of exemptions within the Act did not render the Act violative of the equal protection clause?

## I

### Imposition of the sales tax upon dry cleaners

Robinson argues the sales tax violates the equal protection clause because it is not imposed upon all service providers, only dry cleaners.

■ Both parties agree this Court is charged with applying the rational basis test to determine whether the tax offends

---

1.  U.S. Const. amend. XIV; S.C. Const. art. I, § 3.

the equal protection clause. Under the test the Court is tasked with determining: 1) whether the law treats "similarly situated" entities different; 2) if so, whether the Legislature has a rational basis for the disparate treatment; and 3) whether the disparate treatment bears a rational relationship to a legitimate government purpose. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Bibco Corp. v. City of Sumter*, 332 S.C. 45, 504 S.E.2d 112 (1998).

■ Robinson bears the burden of proving the tax is unconstitutional and it must overcome this Court's mandate to sustain a legislative enactment if there is "any reasonable hypothesis to support it." *D.W. Flowe & Sons, Inc. v. Christopher Constr. Co.*, 326 S.C. 17, 482 S.E.2d 558 (1997).

■ The fundamental disagreement between Robinson and the State focuses on the first prong of the test. Specifically, each side views the composition of those "similarly situated" differently.

■ Robinson asserts those businesses "similarly situated" to it are all service-oriented businesses, while the State asserts "similarly situated" businesses are only dry cleaners. The State, therefore, defines the class in terms of a distinct trade as opposed to Robinson's formulation of a broad economic sector. A class may be constitutionally confined to a particular trade. *See Armour Packing Co. v. Lacy*, 200 U.S. 226, 26 S.Ct. 232, 50 L.Ed. 451 (1906); *State v. Byrnes*, 219 S.C. 485, 66 S.E.2d 33 (1951).

As Robinson does not claim the State taxes dry cleaners, i.e. those "similarly situated," differently it fails to prove a violation of the equal protection clause. *See TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998).

■ Assuming, arguendo, Robinson's definition of "similarly situated" is correct, the argument fails because the State has a rational basis for treating dry cleaners differently. The State's rational basis for treating dry cleaners differently from other service providers serves a legitimate government interest.

To find both the legitimate government interest and the rational basis for treating dry cleaners differently, we view the Act in its entirety. *See South Carolina Coastal Council v. South Carolina State Ethics Com'n,* 306 S.C. 41, 410 S.E.2d 245 (1991) (in interpreting a law a court must look to its language and its meaning in conjunction with the purpose of the whole statute and the policy of the law).

In reviewing the entire Act we note the code provides dry cleaners with a tax exemption for supplies and machinery used to perform their services. *See* S.C.Code Ann. § 12–36–2120(24). As noted by the circuit court, "[u]nlike most service industries, dry cleaners have high startup costs as a result of expensive machinery and equipment ... [b]y exempting machinery purchased by dry cleaners and, in turn, taxing their sales, the Legislature makes it less expensive for individuals to start this type of business."

The State's rational basis for treating dry cleaners differently from other trades in the service industry is to promote the legitimate governmental interests of fostering economic development in a particular segment of the economy. The Legislature achieves this goal by exempting dry cleaners from paying sales taxes on expensive machinery necessary to start the business in exchange for allowing the payment of sales taxes based on later-earned receipts.

Significantly, the State argued below the dry cleaning process involves the use of chemicals and other products posing a threat of environmental harm. The tax may be a method to defray the cost of such harm.

## II

### Exemptions

Robinson argues the sheer number and nature of the exemptions in § 12–46–2120 renders the Act special legislation and unconstitutional in its entirety.

Robinson asserts the Act, which has sixty exemptions,[2] violates equal protection because it treats some sectors of the

---

**2.** There are currently sixty-one exemptions. S.C.Code Ann. § 12–36–2120 (Supp.2002).

service economy more beneficially than others. Robinson further asserts the nature of the categorical exemptions renders it arbitrary and special legislation.[3]

Robinson's argument that "[t]he sheer number of exemptions demonstrates the exemptions are arbitrary" is without merit. We are concerned not with size or volume but with content.

■ Robinson complains the exemptions' content is not natural or reasonable. For example, Robinson asserts that providing tax exemptions for dental prosthetic devices but not for wheelchairs may be arbitrary in the political sense. Robinson may be correct in noting such exemptions belie a misunderstanding of economics, and are therefore unwise in an economic sense. Robinson is not correct in asserting, however, that the exemptions are arbitrary in the constitutional sense. The fact a classification may result in an inequity or may be unwise in an economic sense does not render it unconstitutional. *Davis v. County of Greenville,* 313 S.C. 459, 443 S.E.2d 383 (1994)

■ Robinson's assertions notwithstanding, we must give great deference to the General Assembly's classification decisions because it presumably debated and weighed the advantages and disadvantages of the legislation at issue. *Lee v. South Carolina Dep't of Natural Resources,* 339 S.C. 463, 467, 530 S.E.2d 112, 114 (2000). We agree with the circuit court the State has identified major categories of exemptions and provided a rational basis for each; while Robinson has failed to carry its burden of showing the exemptions are unconstitutional.[4]

Accordingly, we **AFFIRM.**

---

3. We note that even if we were to find the exemptions unconstitutional it would not render Robinson's tax burden unconstitutional. Robinson would still be compelled to pay the sales tax on all laundered goods. *Thayer v. South Carolina Tax Commission,* 307 S.C. 6, 413 S.E.2d 810 (1992).

4. The State proffered the following categorical exemptions: 1) exemptions related to agriculture; 2) exemptions related to health or environmental concerns; 3) exemptions to promote economic development; 4) exemptions related to governmental or tax-exempt entities; 5) exemptions related to education; and 6) exemptions designed to prevent

MOORE and WALLER, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which Acting Justice Diane S. Goodstein, concurs.

Chief Justice TOAL:

I respectfully dissent because I disagree with the majority on both issues I and II. In my opinion, there is no rational basis for treating dry cleaning services differently from other services. I would also find that when viewed in the light most favorable to Robinson, a genuine issue of material fact exists as to whether the sixty-one exceptions to the sales tax are arbitrary and capricious and thus violate the Equal Protection Clause. *Fleming v. Rose,* 350 S.C. 488, 567 S.E.2d 857 (2002).

I

In my view, the sales tax violates the rational basis test and thus violates equal protection. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Bibco Corp. v. City of Sumter,* 332 S.C. 45, 504 S.E.2d 112 (1998). Because I believe that dry cleaning services are part of the same class as other service providers, I would hold that the statute treats "similarly situated" entities differently. Further, I would hold that there is no rational basis for singling out dry cleaners—to the exclusion of other services— for sales tax purposes. Finally, I am not persuaded by the assertion that since the sales tax statute exempts dry cleaners' start-up machinery and equipment costs, S.C.Code Ann. § 12–26–2120(24), dry cleaners are obligated to pay a sales tax on their services. While the trial judge's statement that the majority quoted, "[u]nlike most service industries, dry cleaners have high startup costs as a result of heavy machinery and equipment" may have been true in the 1950's,[5] it certainly is not the case in today's economy. *All* service industries incur

---

excise taxes. Each of the categories has previously been upheld as constitutional. *See, e.g., Byrnes, supra; Robinson v. Richland County Council,* 293 S.C. 27, 358 S.E.2d 392 (1987); *Quirk v. Campbell,* 302 S.C. 148, 394 S.E.2d 320 (1990).

**5.** The original statutes providing for the exemption for start-up supply and machinery costs and for the tax on dry cleaning services were enacted in the 1950's.

significant startup costs, whether they come in the form of equipment, labor, rent, or other overhead costs. I find no reason today for singling out dry cleaners' startup costs as a justification for imposing a sales tax upon their services when all other services also are faced with high costs to enter the marketplace, yet a sales tax is not levied on their services. Therefore, in my view, segregating dry cleaning services from all other services does not rationally relate to a legitimate government purpose.

## II

I would also find that Robinson raised a genuine issue of material fact as to whether the 61 exemptions found in S.C.Code Ann. § 12–46–2120, *in toto*, amount to an arbitrary classification of different entities for tax purposes that is unconstitutional. *See City of Laurens v. Anderson*, 75 S.C. 62, 64, 55 S.E. 136, 137 (1906) (for a law to be deemed constitutional, it "must possess two indispensable qualities: [f]irst, it must be framed as to so extend to and embrace equally all persons who are or may be in the like situation and circumstances; and secondly, the classification must be natural and reasonable, not arbitrary and capricious."). Although this Court ruled in 1951 that the then 19 exemptions to the sales tax were not a "tyrannical exercise of arbitrary power," it is my view that they would conclude that 61 exemptions would rise to that level. *State ex rel. Roddey v. Byrnes*, 219 S.C. 485, 515, 66 S.E.2d 33, 46 (1951).

The State attempted to pigeonhole 33 of the exemptions into six neat categories for tax classification purposes in an effort to illustrate that the exemptions are not arbitrary and capricious. In my opinion, the whimsical nature of the other 28 exemptions renders this legislation arbitrary and capricious. For example, broadcasting companies fare well under the statute, as "all supplies, technical equipment, machinery, and electricity sold to radio and television stations, and cable television systems, for use in producing, broadcasting, and distributing programs" are exempted from the sales tax. S.C.Code Ann. § 12–36–2120(26). The same purchases are tax-free for motion picture companies. S.C.Code Ann. § 12–36–2120(43). Vacation time-sharing plans are exempt. S.C.Code Ann. § 12–36–2120(31). Promotional direct mail

advertising materials are also exempt. S.C.Code Ann. § 12–36–2120(58).

Based on the foregoing reasoning, I would hold that the legislature had no rational basis for singling out dry cleaners from other services for sales tax purposes, and I would reverse the trial judge's grant of summary judgment and remand the exemption issue to determine whether the entire retail tax exemption statute is unconstitutional based on its whimsical treatment of various entities for tax purposes.

Acting Justice DIANE S. GOODSTEIN, concurs.