RETAIL SERVICES & SYSTEMS, INC.,
d/b/a Total Wine & More, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF REVENUE and
ABC Stores of South Carolina, Respondents.

Appellate Case No. 2014-002728
Opinion No. 27709

Supreme Court of South Carolina.

Heard November 5, 2015
Filed March 29, 2017
Petition for Rehearing Dismissed May 31, 2017

Dwight Franklin Drake and Brian Montgomery Barnwell, both of Nelson Mullins Riley & Scarborough, LLP, of Columbia, and Baylen Thomas Moore, of Columbia, for Appellant.

Burnet Rhett Maybank, III and James Peter Rourke, both of Nexsen Pruet, LLC, of Columbia; Counsel for Litigation G. David Crocker, General Counsel for Litigation Milton Gary Kimpson and Counsel for Litigation Carol I. McMahan, all of South Carolina Department of Revenue, of Columbia, for Respondents.

ACTING JUSTICE TOAL:

Appellant Retail Services & Systems, Inc. Retail Services & Systems, Inc., d/b/a Total Wine & More (Retail Services) appeals the trial court's decision granting summary judgment to Respondents South Carolina Department of Revenue (SCDOR) and ABC Stores of South Carolina (ABC Stores). We reverse.

## ANALYSIS

Retail Services owns and operates three separate liquor store locations in Charleston, Greenville, and Columbia, South Carolina. SCDOR is charged with the administration of South Carolina's statutes concerning the manufacturing, sale, and retail of alcoholic liquors. S.C. Code Ann. §§ 61-2-10 & -20. Retail Services petitioned SCDOR to open a fourth store in Aiken, however, SCDOR refused to grant Retail Services a fourth liquor license under sections 61-6-140 and -150 of the South Carolina Code,[1] which limit a liquor-selling entity to three retail liquor licenses. Additionally, ABC Stores lobbies before the General Assembly on behalf of its members who are owners and holders of retail dealer licenses. Therefore, Retail Services brought this action against SCDOR and ABC Stores seeking a declaratory judgment that these provisions of the South Carolina Code are unconstitutional.

Appellant argues that sections 61-6-140 and -150: (1) exceed the scope of the General Assembly's police power provided for in article VIII-A of the South Carolina Constitution[2] because

---

1. *See* S.C. Code Ann. § 61-6-140 (2009) ("No more than three retail dealer licenses may be issued to one licensee.... No more than three retail dealer licenses may be issued for the use of one corporation, association, partnership, or limited partnership."); *id.* § 61-6-150 ("No person, directly or indirectly, individually or as a member of a partnership or an association, as a member or stockholder of a corporation, or as a relative to a person by blood or marriage within the second degree, may have any interest whatsoever in a retail liquor store licensed under this section except the three stores covered by his retail dealer's licenses, as provided for in [s]ection 61-6-140. The prohibitions in this section do not apply to a person having an interest in retail liquor stores on July 1, 1978.").

2. *See* S.C. Const. art. VIII-A, § 1 ("In the exercise of the police power the General Assembly has the right to prohibit and to regulate the

the licensing limits do not promote the health, safety, or morals of the State, but merely provide economic protection for existing retail liquor store owners; (2) violate its rights to equal protection [3] under the law by creating arbitrary distinctions, in that the three-store limit unfairly treats large retailers differently from small retailers and that section 61-6-150's "grandfather clause," unfairly discriminates against those that did not have an interest on or before July 1, 1978, and unfairly differentiates between owners of stores that sell liquor for on-site consumption and those that sell liquor for off-site consumption; and (4) violate its due process rights [4] because they unfairly prevent Appellant from operating in its chosen field of business.

The trial court found the provisions constitutional because (1) they are within the scope of the State's police power; and (2) they satisfy the rational basis test, which, because they do not infringe on a fundamental right or implicate a suspect class, is all that is required. Therefore, the circuit court granted Respondents' motions for summary judgment. Appellant appealed the circuit court's decision. We now review the circuit court's decision and reverse.

■ "This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001) (citing *Davis v. Cnty. of Greenville*, 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996)).

■ While article VIII-A, section 1 of the South Carolina Constitution contains a broad mandate to the General Assembly with respect to regulating the sale and retail of alcohol in South Carolina, this ability to regulate is not as far-reaching as Respondents maintain. *See State ex rel. George v. City Council of Aiken*, 42 S.C. 222, 20 S.E. 221, 230 (1894) ("[I]f the

manufacture, sale, and retail of alcoholic liquors or beverages within the State.").

3. S.C. Const. art. I, § 3 (providing no person "shall ... be denied the equal protection of the laws").

4. S.C. Const. art. I, § 3 (providing no person "shall ... be deprived of life, liberty, or property without due process of law....").

act is not a police measure, it is unconstitutional."). We find that sections 61-6-140 and -150 of the South Carolina Code are unconstitutional because they exceed the scope of the General Assembly's police powers.[5]

■ Under the current paradigm, the government may "regulate any trade, occupation or business, the unrestrained pursuit of which might affect injuriously the public health, morals, safety or comfort; and in the exercise of the power particular occupations may be . . . required to be conducted within designated limits." *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 98, 596 S.E.2d 917, 924 (2004) (quoting *City of Charleston v. Esau Jenkins*, 243 S.C. 205, 210–11, 133 S.E.2d 242, 244 (1963)). This mandate is especially broad with respect to regulating liquor:

> In the exercise of the police power the General Assembly has the right to prohibit and to regulate the manufacture, sale, and retail of alcoholic liquors or beverages within the State. The General Assembly may license persons or corporations to manufacture, sell, and retail alcoholic liquors or

---

5. For many years, our precedents embraced Lochner-era principles justifying court invalidation of almost all legislative restrictions on private business. However, in *R.L. Jordan Co.*, the Court replaced this test with a rational relationship test. 338 S.C. at 477–78, 527 S.E.2d at 765 ("Accordingly, we overrule our cases which apply the traditional approach, and adopt this standard for reviewing all substantive due process challenges to state statutes: 'Whether it bears a reasonable relationship to any legitimate interest of government.'" (footnote omitted)). Under the Lochner approach, the state could regulate prices charged by businesses for goods and services whenever the business was "'affected with a public interest.'" *R.L. Jordan Co. v. Boardman Petroleum, Inc.*, 338 S.C. 475, 477, 527 S.E.2d 763, 764–75 (2000) (quoting *Gwynette v. Myers*, 237 S.C. 17, 115 S.E.2d 673 (1960)); *see Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). We have a number of precedents regulating businesses in this broad fashion. *See, e.g., State Dairy Comm'n of S.C. v. Pet, Inc.*, 283 S.C. 359, 363, 324 S.E.2d 56, 58 (1984) (finding that the wholesale milk industry was not so affected with the public interest as to authorize price regulation or price control by the State), *overruled by R.L. Jordan Co.*, 338 S.C. at 475, 527 S.E.2d at 763. As of 2000, we formally abandoned the Lochner-era test, yet in this case some fourteen years later, Respondents offer economic protectionism as the sole justification of this extreme business regulation. We reference this background merely to provide historical context to the type of extreme industry regulation Respondents ask this Court to uphold, and not as the dissent suggests, to resolve this matter on due process grounds.

beverages within the State under the rules and restrictions as it considers proper. . . .

S.C. Const. art. VIII-A, § 1.

 Here, the circuit court justified the three-license restrictions on corporations as "preserving the right of small, independent liquor dealers to do business." Moreover, counsel for Respondents repeatedly stated to this Court during oral arguments that the *only* justification for these provisions is that they support small businesses. The record does not contain any evidence of the alleged safety concerns incumbent in regulating liquor sales in this way. Without any other supportable police power justification present, economic protectionism for a certain class of retailers is not a constitutionally sound basis for regulating liquor sales. *See Bacchus Imports v. Dias*, 468 U.S. 263, 276, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) ("State laws that constitute mere economic protectionism are . . . not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor."); *McCullough v. Brown*, 41 S.C. 220, 247–48, 19 S.E. 458, 472–73 (1894), *overruled on other grounds by State ex rel. George*, 42 S.C. at 254, 20 S.E. at 233 (holding that if a statute regulating alcoholic liquors is enacted for economic purposes rather than "as a police regulation of the business of selling intoxicating liquors," it is unconstitutional).

Not only is there no indication in this record that these provisions exist for any other reason than economic protectionism, the provisions themselves and statutory scheme to which they belong lend further support to Appellant's position. As Appellant points out, the provisions do not limit the number of liquor stores that can be licensed in a certain area—only the number than can be owned by one person or entity.[6] Another provision governs the specific placement of retail establishments away from churches, schools and playgrounds. *See* S.C. Code Ann. § 61-6-120. Therefore, Respon-

---

6. In fact, another provision of the statutory scheme provides DOR with the discretion to "limit the further issuance of retail dealer licenses in a political subdivision if it determines that the citizens who desire to purchase alcoholic liquors therein are more than adequately served because of (1) the number of existing retail stores, (2) the location of the stores within the subdivision, or (3) other reasons." S.C. Code Ann. § 61-6-170 (2009).

dents' contention that the provisions advance the safety and moral interests of the State, no doubt a legitimate State interest, is unavailing with respect to sections 61-6-140 and -150.

While the dissent contains a learned and well-reasoned analysis of constitutional challenges to statutes restricting the sale of liquor, the dissent acknowledges that Respondents and the trial court justified the three-license restrictions on corporations as "preserving the right of small, independent liquor dealers to do business." Appellant argues that this proves that this statutory restriction exists solely for economic protectionism and is thus invalid. The dissent acknowledges that this argument has some appeal, but claims the restriction must be evaluated alongside the numerous other justifications expressed for the statutes before proceeding to cite justifications offered in case from New Hampshire (1972), Massachusetts (1978), and New Jersey (1964 and 2009). While the dissent provides that economic protectionism is merely one of the police justifications for this type of regulation and there are other valid police purposes attributable to these provisions, this contention is not supported by the record below, as it was in the records of the cases cited from other states. As noted previously, Respondents' experienced counsel repeatedly stated to this Court during oral arguments that the *only* justification for these provisions is that they support small businesses.[7]

Ultimately, the Respondents' and dissent's position amounts to "it's just liquor," which is not a legitimate basis for regulation. Under this rationale, market regulation—no matter how oppressive—cannot ever be said to be unconstitutional. While we acknowledge that the State is granted broad powers with respect to regulating liquor sales, this is an example of market regulation that exceeds constitutional bounds. Therefore, we reverse the trial court's decision granting summary judgment to Respondents, and find sections 61-6-140 and -150 unconsti-

---

7. I note that this argument was exclusively relied upon during oral arguments by Respondents' very experienced counsel, not just as a consequence of the Court's questioning. Counsel was not prohibited from propounding any other basis for the regulation, and therefore should be held to his statements to the Court that this is a protectionist statute.

tutional as violative of the General Assembly's police powers under article VIII-A, section 1 of the South Carolina Constitution.[8]

HEARN, J., concurs. BEATTY, C.J. and Acting Justice Costa M. Pleicones, concurring in result only. KITTREDGE, J., dissenting in a separate opinion.

JUSTICE KITTREDGE:

I respectfully dissent. In my view the majority miscomprehends the law governing this dispute, as well as the record before the Court. I would affirm the trial court's grant of summary judgment to Respondents South Carolina Department of Revenue (SCDOR) and ABC Stores of South Carolina (ABC Stores), thereby reaching the same conclusion as virtually every other court[9] to have reviewed restrictions such as those found in sections 61-6-140[10] and -150[11] (the Statutes) of the South Carolina Code. Indeed, our standard of review mandates that result.

---

8. We need not reach Appellant's equal protection and due process arguments as the police power argument is dispositive of the issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591 (1999) (finding appellate courts need not reach remaining issue when one issue is dispositive).

9. *See infra* Part II; *cf. Grand Union Co. v. Sills*, 43 N.J. 390, 204 A.2d 853, 862 (1964) (noting that state anti-tied house legislation, which prohibits manufacturers, wholesalers, and retailers of alcoholic beverages from having common ownership, has repeatedly withstood constitutional challenges).

10. "No more than three retail dealer licenses may be issued to one licensee. . . . No more than three retail dealer licenses may be issued for the use of one corporation, association, partnership, or limited partnership." S.C. Code Ann. § 61-6-140 (2009).

11. "No person, directly or indirectly, individually or as a member of a partnership or an association, as a member or stockholder of a corporation, or as a relative to a person by blood or marriage within the second degree, may have any interest whatsoever in a retail liquor store licensed under this section except the three stores covered by his retail dealer's licenses, as provided for in Section 61-6-140. The prohibitions in this section do not apply to a person having an interest in retail liquor stores on July 1, 1978." *Id.* § 61-6-150.

## I.

"This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001) (citing *Davis v. County of Greenville*, 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996)). "Moreover, when the constitutionality of a statute is challenged, *every presumption will be made in favor of its validity*. . . . A 'legislative act will not be declared unconstitutional unless its repugnance to the constitution is *clear and beyond a reasonable doubt.*' " *Segars-Andrews v. Judicial Merit Selection Comm'n*, 387 S.C. 109, 118, 691 S.E.2d 453, 458 (2010) (per curiam) (emphasis added) (quoting *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999)). Therefore, to prevail, Appellant Retail Services & Systems, Inc. "must overcome this Court's mandate to sustain a legislative enactment if there is 'any reasonable hypothesis to support it.' " *Ed Robinson Laundry & Dry Cleaning, Inc. v. S.C. Dep't of Revenue*, 356 S.C. 120, 124, 588 S.E.2d 97, 99 (2003) (quoting *D.W. Flowe & Sons v. Christopher Constr. Co.*, 326 S.C. 17, 23, 482 S.E.2d 558, 562 (1997)).

That mandate is even stronger in the realm of alcohol regulations because, "within the area of its jurisdiction, the State has virtually complete control over the . . . structure of the liquor distribution system." *North Dakota v. United States*, 495 U.S. 423, 431, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) (plurality opinion) (internal quotation marks omitted). Furthermore, "[g]iven the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly." *Id.* at 433, 110 S.Ct. 1986.

Although the majority pays lip service to this well-established principle, the majority proceeds to ignore it in favor of some unspoken standard more closely resembling strict scrutiny.[12] I would not disregard the legal standard that governs our review of this case.

---

12. "To survive strict scrutiny" a law "must meet a compelling state interest and be narrowly tailored to effectuate that interest." *In re*

## II.

### A. Police Power

As the majority is constrained to admit, the state constitution grants the General Assembly almost plenary authority to regulate the sale of alcohol:

In the exercise of the police power the General Assembly has the right to prohibit and to regulate the manufacture, sale, and retail of alcoholic liquors or beverages within the State. The General Assembly *may license persons or corporations to manufacture, sell, and retail alcoholic liquors or beverages within the State under the rules and restrictions as it considers proper....* The General Assembly may prohibit the manufacture, sale, and retail of alcoholic liquors and beverages within the State, and may authorize and empower state, county, and municipal officers, all or either, under the authority and in the name of the State, to buy in any market and retail within the State liquors and beverages ... under such rules and regulations[ ] as it considers expedient.

S.C. Const. art. VIII-A, § 1 (emphasis added). However, this Court's recognition of the General Assembly's broad power to regulate alcohol predates the Constitution of 1895. We prefaced our consideration of a challenge to an 1893 law restricting the sale of alcohol with the following:

[I]n our opinion the following propositions embody the principles governing this case: (1) That liquor, in its nature, is dangerous to the morals, good order, health, and safety of the people, and is not to be placed on the same footing with the ordinary commodities of life, such as corn, wheat, cotton, tobacco, potatoes, etc. (2) That the State, under its police power, can itself assume entire control and management of those subjects, such as liquor, that are dangerous to the peace, good order, health, morals, and welfare of the people, even when trade is one of the incidents of such entire control and management.... (3) That the [Dispensary A]ct of 1893 is a police measure.

*Treatment & Care of Luckabaugh*, 351 S.C. 122, 140–41, 568 S.E.2d 338, 347 (2002).

*State ex rel. George v. Aiken*, 42 S.C. 222, 231–32, 20 S.E. 221, 224 (1894). We then went on to state,

> "The police power of the State is fully competent to regulate the business [of retail alcohol sales], to mitigate its evils, or to suppress it entirely. ... As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authorities."

*Id.* at 233–34, 20 S.E. at 225 (quoting *Crowley v. Christensen*, 137 U.S. 86, 91, 11 S.Ct. 13, 15, 34 L.Ed. 620 (1890)).

Appellant nonetheless argues that the Statutes exceed this broad grant of authority because they do not relate to the health, safety, or morals of the State, but merely provide economic protection for existing liquor retailers. The majority agrees, claiming there is no evidence in the record that the Statutes exist for a reason other than to protect liquor store owners from competition. If that were true, I might be inclined to join the majority. However, one does not have to scour the record for long to find other justifications for the Statutes.

The trial court noted that numerous reasonable hypotheses have been put forward for how limiting the number of retail liquor stores in which a person may have an interest or the number of retail liquor licenses an entity may be issued affects the health, safety, or morals of the State. Despite the majority's repeated assertions to the contrary, these extend far beyond "preserving the right of small, independent liquor dealers to do business." For instance, the Supreme Judicial Court of Massachusetts stated,

> Concentration of retailing in the hands of an economically powerful few has been thought to intensify the dangers of liquor sales stimulations, thereby threatening *trade stability* and *promotion of temperance*. Regulation of the number of licenses issued, therefore, aims at controlling the tendency toward concentration of power in the liquor industry; preventing monopolies; avoiding practices such as *indiscriminate price cutting* and *excessive advertising*; and preserving the right of small, independent liquor dealers to do business.

*Johnson v. Martignetti,* 374 Mass. 784, 375 N.E.2d 290, 297 (1978) (emphasis added).[13]

Appellant argues that the stated justification of "preserving the right of small, independent liquor dealers to do business" proves that the Statutes exist solely for the purpose of economic protectionism and are therefore invalid. I acknowledge this argument has some appeal, but the argument ignores the fact that the justification of protecting small liquor retailers is listed *after* several non-protectionist motives, such as promoting temperance by discouraging business practices that promote alcohol consumption. As the Supreme Court of New Hampshire, which was quoted by the experienced trial judge, stated, "[T]he issue here is whether the limitation confers a public benefit, not whether it also incidentally confers a private benefit. . . . That a law is popular [among small retailers] is insufficient to make it unconstitutional." *Granite State Grocers Ass'n v. State Liquor Comm'n,* 112 N.H. 62, 289 A.2d 399, 402 (1972).

The Supreme Court of New Jersey has also upheld that state's limitation on the issuance of retail liquor licenses against a claim that the limit "has no observable public purpose and was enacted solely for the benefit of private interests." *Grand Union Co. v. Sills,* 43 N.J. 390, 204 A.2d 853, 860 (1964). The court rejected the idea that the restriction's incidental impact on private businesses rendered it invalid, stating, "[T]he fact that [a law limiting a person to two retail liquor licenses] was sponsored or supported by organizations, whose private interests happened to coincide with the public interests as determined by the Legislature, in nowise impaired its validity or effectiveness." *Id.* The court noted that the limitation prevented the growth of chain liquor stores— stores that "would economically be the most capable of local advertising and price cutting through private brands" and whose "mode of operation furthers absentee ownership in this highly susceptible branch of trade." *Id.* at 859. The court also

---

13. The statute at issue in *Johnson* "provide[d], in substance, that no person or combination of persons, directly or indirectly, sh[ould] be granted more than three liquor licenses for the sale of alcoholic beverages to be consumed away from the premises." *Johnson,* 375 N.E.2d at 293. Massachusetts law currently limits a person or entity to seven retail alcohol licenses. Mass. Gen. Laws ch. 138, § 15.

noted that the legislature had reasonably concluded such practices were "inimical to temperance and trade stability." *Id.* Therefore, the restriction was a valid exercise of New Jersey's inherent power "to curb relationships and practices calculated to stimulate sales [of liquor] and impair the State's policy favoring trade stability and the promotion of temperance." *Id.* at 860. More recently, the court even declared the constitutionality of the state's two-license limit[14] "beyond dispute." *Circus Liquors, Inc. v. Governing Body of Middletown Twp.*, 199 N.J. 1, 970 A.2d 347, 352 (2009).

Although the majority acknowledges these justifications, it claims they cannot be found in the record before this Court. Yet in its answer to Appellant's complaint, ABC Stores used language almost identical to that from *Johnson*, quoted above, listing various justifications for the Statutes. These include promoting trade stability and temperance by protecting against the dangers of aggressive sales tactics like price cutting and excessive advertising. Therefore, the justifications the majority claims were sufficient for the courts of Massachusetts, New Hampshire, and New Jersey[15] to find a valid exercise of police power exist in the record before this Court— whether the majority admits it or not.[16]

---

14. N.J. Stat. Ann. § 33:1-12.31.

15. Numerous federal courts have also upheld licensing restrictions similar to those found in the Statutes. *See, e.g., Parks v. Allen*, 426 F.2d 610, 614 (5th Cir. 1970) (upholding a city ordinance limiting a family to two retail liquor licenses as a valid exercise of the city's police power).

16. I acknowledge that Respondents did not focus on non-economic justifications for the Statutes during oral argument. I suggest the focus and limitations of oral argument were driven by the many questions posed by the Court, which seemed to have a singular focus on establishing economic protectionism as the only motive for the Statutes. Moreover, the majority's claim that Respondents repeatedly asserted during oral argument that protecting small businesses was the *only* justification for the Statutes is simply not true. The record before this Court also includes the pleadings, the extensive record from the trial court, and the briefs—all of which make clear the many proper justifications for the Statutes. Furthermore, although the record contains numerous valid justifications for the Statutes, "in determining whether there is a legitimate government purpose, *the actual motivations of the enacting governmental body are entirely irrelevant." Lee v. S.C. Dep't of Nat. Res.*, 339 S.C. 463, 470 n.4, 530 S.E.2d 112, 115 n.4 (2000) (emphasis added) (citing *Bibco Corp. v. City of Sumter*, 332 S.C. 45, 53, 504 S.E.2d 112,

At bottom, the majority disagrees with the General Assembly's policy decision limiting to three the number of licensed retail liquor stores in which a person may have an interest and the number of retail liquor licenses an entity may be issued.[17] Fair enough. "However, it is not within our province to weigh[ ]in on the wisdom of legislative policy determinations." *Town of Hilton Head Island v. Kigre, Inc.*, 408 S.C. 647, 649–50, 760 S.E.2d 103, 104 (2014) (per curiam); *accord Grand Union Co.*, 204 A.2d at 860 (noting that it is not the role of the court to act as a "superlegislature" or concern itself with the wisdom of legislative enactments). We sit only in judgment of a statute's conformity with, or repugnance to, the constitution. *See, e.g., City of Rock Hill v. Harris*, 391 S.C. 149, 154, 705 S.E.2d 53, 55 (2011) ("The power of our state legislature is plenary, and therefore, the authority given to the General Assembly by our Constitution is a limitation of legislative power, not a grant. This means that 'the General Assembly may enact any law not expressly, or by clear implication, prohibited by the State or Federal Constitution[ ].' " (quoting *Moseley v. Welch*, 209 S.C. 19, 27, 39 S.E.2d 133, 137 (1946))); *accord Grand Union Co.*, 204 A.2d at 860 ("Our function is to determine whether the Legislature has gone beyond the outer limits of its constitutional power. ... [W]hile some may consider other regulatory courses to be preferable, we cannot say

116 (1998)); *cf. FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (noting that when considering an equal protection challenge to a statutory classification subject to rational basis review, "because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature" and "the absence of legislative facts" in the record to support the legislature's decision "has no significance" (citations and internal quotation marks omitted)).

17. I note that legislative attempts to amend or repeal the Statutes have been unsuccessful. *See* H.R. 3375, 121st Gen. Assemb., 1st Reg. Sess. (S.C. 2015) (repealing the Statutes and imposing limits on retail liquor licenses based on county population); S. 404, 120th Gen. Assemb., 1st Reg. Sess. (S.C. 2013) (increasing the limits in the Statutes from three licenses to ten licenses). It appears Appellant is therefore attempting to accomplish through the Court what it has been unable to achieve properly through the General Assembly. Regrettably, Appellant has persuaded a majority of my colleagues to take the bait and act as a superlegislature, thereby enabling Appellant to bypass the General Assembly entirely.

that the course chosen by the Legislature ... is entirely without [a] rational basis."). The fact that other ways, perhaps even better ways, may exist to accomplish the General Assembly's goals is therefore of no import because "[w]e do not sit as a superlegislature to second guess the wisdom or folly of decisions of the General Assembly." *Keyserling v. Beasley*, 322 S.C. 83, 86, 470 S.E.2d 100, 101 (1996). Given the numerous expressed justifications for the licensing limitations, Appellant has fallen short of refuting every "reasonable hypothesis" in favor of the Statutes' constitutionality. Thus, under our deferential standard of review,[18] Appellant's claim that the Statutes exceed the General Assembly's police power to regulate the sale of alcohol must fail.

## B. Equal Protection and Due Process

Because I would find the Statutes to be a legitimate exercise of the State's police power,[19] I would next consider Appellant's challenge to the Statutes under South Carolina's Equal Protection and Due Process Clauses.[20] For the reasons

18. As already noted, the majority largely ignores this standard. The majority's assertion that Respondents' police power argument is "unavailing" because other statutes already regulate various aspects of the liquor trade is further evidence that the majority has improperly injected strict scrutiny principles into its analysis. *Compare In re Treatment & Care of Luckabaugh*, 351 S.C. at 140–41, 568 S.E.2d at 347 (stating that laws impairing fundamental rights must be narrowly tailored to achieve a compelling state interest), *with id.* at 140 n.7, 568 S.E.2d at 347 n.7 (noting that laws challenged under the state constitution are typically subject to rational basis review).

19. As far as I can tell, no other court has held that such laws exceed a state's police power. When restrictions on the sale of alcohol have been struck down, it has generally been on some other discrete constitutional or statutory ground. *See, e.g., Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 276, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (declaring a state law taxing certain alcoholic beverages produced in-state differently from beverages produced out-of-state to be violative of the Commerce Clause and noting that the state justified the law solely on the basis of promoting the local beverage industry); *Rice v. Alcoholic Bev. Control Appeals Bd.*, 21 Cal.3d 431, 146 Cal.Rptr. 585, 579 P.2d 476, 494–95 (1978) (holding that California's liquor price-fixing statute violated federal antitrust law).

20. "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process

expressed below, I would find Appellant has also failed to prove the Statutes violate these constitutional provisions.[21]

## 1. Equal Protection

Appellant has not proven that the classifications created by the Statutes violate the Equal Protection Clause.

This Court [has] recognize[d] that the determination of whether a classification is reasonable is initially one for the legislature and will not be set aside by the courts unless it is plainly arbitrary. The requirements of equal protection are satisfied as long as (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar

---

of law, nor shall any person be denied the equal protection of the laws." S.C. Const. art. I, § 3. On appeal, Appellant does not refer to the Equal Protection and Due Process Clauses of the United States Constitution, basing its arguments instead on the South Carolina Constitution.

21. I find the majority's reference to due process jurisprudence puzzling because, after all, the majority purports to not consider Appellant's due process challenge to the Statutes. Questions of relevancy aside, the majority's interpretation of these precedents is sorely lacking. I do not believe the majority fully appreciates what it says when it claims that *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), justified "court invalidation of almost all legislative restrictions on private business." That could hardly be further from the truth. In *Lochner*, the U.S. Supreme Court expressed skepticism about economic regulations that were ostensibly enacted under the police power but were, "in reality, passed from other motives." 198 U.S. at 64, 25 S.Ct. 539. The Court therefore invalidated a regulation it determined violated employers' and employees' due process rights to contract with one another over terms of employment. *Id.* Of course, the U.S. Supreme Court later repudiated *Lochner*, which it has characterized as standing for the discredited proposition "that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely." *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). When we ourselves repudiated the *Lochner* standard—in a case cited and relied upon by the majority—we noted that most restrictions on private economic conduct failed to survive constitutional scrutiny under the *Lochner* approach. *R.L. Jordan Co. v. Boardman Petrol., Inc.*, 338 S.C. 475, 476–77, 527 S.E.2d 763, 764 (2000). We then adopted the "modern rule," which "gives great deference to legislative judgment on what is reasonable to promote the public welfare when reviewing economic and social welfare legislation." *Id.* at 477, 527 S.E.2d at 765 (citation omitted). Thus, by refusing to give proper deference to the General Assembly's judgment, it is the majority that summons *Lochner*'s ghost, not me.

circumstances and conditions; and (3) the classification rests on some reasonable basis.

*Fraternal Order of Police v. S.C. Dep't of Revenue*, 352 S.C. 420, 430, 574 S.E.2d 717, 722 (2002) (quoting *Gary Concrete Prods., Inc. v. Riley*, 285 S.C. 498, 504, 331 S.E.2d 335, 338–39 (1985)) (internal quotation marks omitted). Regardless of how Appellant defines the classifications at issue, because neither a suspect classification, such as race, nor a fundamental right is implicated, the classifications created by the Statutes need only be rationally related to a legitimate state interest. *Id.* at 430–31, 574 S.E.2d at 722 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)).

Appellant has not proven any of the factors necessary to succeed on this claim. There is no evidence Appellant is being treated differently from others within its classification—entities with three retail liquor licenses in South Carolina.[22] Moreover, although Appellant may be treated differently than, say, owners of restaurants, "[t]he fact that [a] classification may result in some inequity does not render it unconstitutional." *Davis v. County of Greenville*, 313 S.C. 459, 465, 443 S.E.2d 383, 386 (1994) (citing *Cerny v. Salter*, 311 S.C. 430, 432, 429 S.E.2d 809, 811 (1993)). While restaurants and liquors stores may both sell alcohol, common sense dictates that the former, which sell single servings of alcohol for on-site consumption and must comply with numerous regulations inapplicable to liquor stores,[23] and the latter, which sell large quantities of alcohol for off-site consumption, implicate the dangers associated with the sale and consumption of alcohol in vastly differ-

---

22. According to SCDOR, one entity in South Carolina currently has four retail liquor licenses, held pursuant to the "grandfather clause" in section 61-6-150. However, section 61-6-150's grandfather clause refers to the limit on the number of licensed retail liquor stores in which a person may have an interest; it does not apply to section 61-6-140's limit on the number of retail liquor licenses an entity may be issued. *See* S.C. Code Ann. §§ 61-6-140 to -150. In fact, ABC Stores acknowledged during oral argument that section 61-6-150's grandfather clause does not permit a person or entity to hold more than three retail liquor licenses.

23. *See* 4 S.C. Code Ann. Regs. 61-25 (Supp. 2016) (imposing regulations on retail food establishments).

ent ways.[24] Further, as explained above in the discussion on the scope of the State's police power, limiting the number of licensed retail liquor stores in which a person may have an interest or the number of retail liquor licenses an entity may be issued has repeatedly been held to be rationally related to the government's interest in regulating the sale of alcohol. Finally, the government's interest in these regulations is clearly legitimate, a fact exemplified by the State's constitution. *See* S.C. Const. art. VIII-A, § 1; *see also Davis v. Query*, 209 S.C. 41, 57–58, 39 S.E.2d 117, 124–25 (1946) (citations omitted) (noting that government regulations of alcohol have been almost universally upheld). Therefore, Appellant's equal protection claim fails.

## 2. Due Process

For similar reasons, Appellant's due process challenge fails. "When an act is challenged under the due process clause, this 'Court only requires the act to be reasonably designed to accomplish its purposes, unless some fundamental right or suspect class is implicated.'" *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 140, 568 S.E.2d 338, 347 (2002) (quoting *State v. Hornsby*, 326 S.C. 121, 125–26, 484 S.E.2d 869, 872 (1997)). Furthermore, "to prove a denial of substantive due process, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law." *Grimsley v. S.C. Law Enforcement Div.*, 396 S.C. 276, 283, 721 S.E.2d 423, 427 (2012) (citing *Worsley Cos. v. Town of Mount Pleasant*, 339 S.C. 51, 56, 528 S.E.2d 657, 660 (2000)).

Appellant has attempted to broadly phrase the interest at stake in this case as the ability to pursue its chosen line of business. However, as the trial court correctly noted, there is no fundamental right to own a certain number of liquor stores in South Carolina. *See, e.g., Query*, 209 S.C. at 56, 39 S.E.2d at 124 (noting that a liquor store owner "has no vested right to operate ... in any manner other than that dictated by the

---

**24.** *Cf. Ind. Petrol. Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 324–25 (7th Cir. 2015) (rejecting an equal protection challenge to a law allowing only certain types of stores to sell cold beer and stating that policy arguments against the law were matters for the state legislature, not the federal courts).

state"). Retail liquor licenses themselves are not even property, but "mere permits, issued or granted in the exercise of the police power of the State to do what otherwise would be unlawful to do[,] and to be enjoyed only so long as the restrictions and conditions governing their continuance are complied with." *Feldman v. S.C. Tax Comm'n*, 203 S.C. 49, 57, 26 S.E.2d 22, 25 (1943) (citation omitted). Therefore, absent a fundamental right or suspect class, as with Appellant's equal protection challenge the Statutes need only satisfy the rational basis test.

As explained above, the Statutes "bear[ ] a reasonable relationship to a legitimate interest of government, and the Legislature has not engaged in an arbitrary or wrongful act in enacting the [S]tatute[s]." *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 484, 636 S.E.2d 598, 615 (2006), *overruled on other grounds by Joseph v. S.C. Dep't of Labor, Licensing & Regulation*, 417 S.C. 436, 790 S.E.2d 763 (2016). Thus, the Statutes easily clear that hurdle.

The fact that restrictions such as those found in the Statutes need only satisfy the rational basis test explains why they repeatedly "have been held not to violate the due process or equal protection rights of liquor licensees." John D. Geathers & Justin R. Werner, *The Regulation of Alcoholic Beverages in South Carolina* 138 (2007). The Statutes plainly satisfy this test, as "many sound reasons have been advanced to support restrictions on the number of liquor licenses allowed any one business interest." *Johnson*, 375 N.E.2d at 297. I find Appellant's arguments to the contrary unpersuasive.

### III.

The Statutes are clearly rationally related to the legitimate government purpose of regulating the sale of alcohol.[25] Accord-

---

**25.** In its closing paragraph the majority claims my argument amounts to nothing more than "it's just liquor." Although not dispositive, the fact that the Statutes regulate liquor *is* important, as this Court and others have recognized that liquor is a unique commodity amenable to unique restrictions. *See, e.g., Query*, 209 S.C. at 56–57, 39 S.E.2d at 124 (noting that the retail liquor trade is no "ordinary business" and liquor is "a peculiar problem upon which ... the police power operates with less restraint than upon other commodities"); *State ex rel. George*, 42 S.C. at 232, 20 S.E. at 224 (stating that liquor "is not to be placed on

ingly, Appellant has failed to satisfy the heavy burden required to have this Court declare the Statutes unconstitutional. I would therefore not ignore "this Court's mandate to sustain a legislative enactment if there is any reasonable hypothesis to support it,"[26] and would affirm the judgment of the trial court.

---

the same footing with the ordinary commodities of life, such as corn, wheat, cotton, tobacco, potatoes, etc."); *Granite State Grocers Ass'n*, 289 A.2d at 401 (dismissing the claim that alcohol is "an economic commodity similar to cabbages and candlesticks" and noting that the state considered alcohol to be "a thing apart, a commodity with a potential for social harm unlike [other goods]"). It is also the only good singled out for regulation by the State in both the federal and state constitutions. *See* U.S. Const. amend. XXI, § 2; S.C. Const. art. VIII-A, § 1. Therefore, restrictions on the sale of alcohol may be constitutional even though they would not be if directed toward other goods. *See State ex rel. George*, 42 S.C. at 234, 20 S.E. at 225 ("It is because liquor is not regarded as one of the ordinary commodities that the [Dispensary A]ct of 1892, prohibiting its sale, was, as to that matter, construed to be constitutional. We can not for a moment believe that the court would have declared an act constitutional that prohibited entirely the sale of corn, cotton, or other ordinary commodities.").

26. *Ed Robinson Laundry & Dry Cleaning, Inc.*, 356 S.C. at 124, 588 S.E.2d at 99 (citation and internal quotation marks omitted).