# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Orthofix, Inc., Respondent,

v.

South Carolina Department of Revenue, Appellant.

Appellate Case No. 2023-000317

and

KCI USA, Inc., Respondent,

v.

South Carolina Department of Revenue, Appellant.

Appellate Case No. 2023-000318

———————

Appeal from Lexington County
William P. Keesley, Circuit Court Judge

———————

Opinion No. 28211
Heard March 5, 2024 – Filed June 26, 2024

———————

## AFFIRMED AS MODIFIED

———————

Marcus Dawson Antley III and Jason Phillip Luther, both of Columbia, for Appellant.

James F. Reames III and Jennifer Joan Hollingsworth, both of Maynard Nexsen PC, of Columbia; Catherine A.

Battin, of McDermott Will & Emery, LLP, of Chicago, IL; and Michael J. Hilkin, of McDermott Will & Emery, LLP of New York, NY, all for Respondents.

---

**JUSTICE KITTREDGE:** South Carolina law recognizes a sales tax exemption for the sale of durable medical equipment (DME) which is paid for directly by Medicaid or Medicare funds, but only when the seller's principal place of business is located in South Carolina (the DME exemption). *See* S.C. Code Ann. § 12-36-2120(74) (2014). Orthofix, Inc. and KCI USA, Inc. (collectively, Respondents) do not qualify for the DME exemption because their principal places of business are located out of state. As a result, purely because they participate in interstate commerce, Respondents have been forced to remit sales tax that other, similar in-state sellers have not. Respondents now raise identical dormant Commerce Clause challenges to the DME exemption. Agreeing with Respondents that the DME exemption facially discriminates against interstate commerce, the circuit court severed the unconstitutional "principal place of business in South Carolina" language from the DME exemption and ordered the South Carolina Department of Revenue (DOR) to refund the sales tax Respondents paid during the contested time periods.

We affirm the circuit court's decision as modified. We agree the DME exemption unconstitutionally discriminates against interstate commerce in violation of the dormant Commerce Clause and, under the facts of this case, the ordered refunds are therefore appropriate. However, because we find Respondents have not satisfied their burden of proof to show the legislature would have passed the remainder of the DME exemption absent the unconstitutional language, we decline to sever only the offending language and instead declare the entire DME exemption void going forward. We acknowledge our decision to invalidate the entire DME exemption presents a close question, as it is based on a lack of evidence regarding legislative intent rather than affirmative evidence to that effect. The legislature may, if it elects, reenact the exemption, save the unconstitutional limitation on a seller's principal place of business.

## I.

The facts have been stipulated by the parties and are not at issue here.

Respondents are both Delaware corporations, and each has its principal place of business out of state. They each hold a South Carolina retail sales license and sell

DME and related supplies in South Carolina.

Typically, under South Carolina law, a 6% sales tax is imposed on the gross proceeds of most sales in the state. S.C. Code Ann. §§ 12-36-910(A), -1110 (2014). However, section 12-36-2120 lists eighty-three categories of sales that are exempt from the standard 6% sales tax. *See generally id.* § 12-36-2120. At issue here is section 12-36-2120(74) (the DME exemption), which was enacted in 2007 and provides:

> Exempted from the [6% sales tax] are the gross proceeds of sales, or sales price of:
>
> . . . .
>
>> (74) durable medical equipment and related supplies:
>>
>>> (a) as defined under federal and state Medicaid and Medicare laws;
>>>
>>> (b) which is paid directly by funds of this State or the United States under the Medicaid or Medicare programs, where state or federal law or regulation authorizing the payment prohibits the payment of the sale or use tax; and
>>>
>>> (c) sold by a provider who holds a South Carolina retail sales license *and whose principal place of business is located in this State* . . . .

*Id.* § 12-36-2120(74) (emphasis added).

Respondents initially sold DME in South Carolina and remitted the 6% sales tax to the DOR without protest. Eventually, however, Respondents requested refunds for the sales tax paid during the period between October 1, 2014, and September 30, 2017 (KCI), and March 1, 2017, and March 31, 2020 (Orthofix).[1] The DOR denied the refund claims, explaining that Respondents did not qualify for the DME exemption because they had not satisfied the requirements of section

---

[1] *See* S.C. Code Ann. § 12-54-85(F)(1) (2014) ("[C]laims for credit or refund must be filed within three years from the time the return was filed, or two years from the date the tax was paid, whichever is later. . . .").

12-36-2120(74)(c). More specifically, the DOR denied the claims because Respondents' principal places of business were not in South Carolina.

Respondents separately appealed the decisions within the DOR, arguing that limiting the DME exemption only to sellers with principal places of business in South Carolina facially discriminated against out-of-state businesses, violating the dormant Commerce Clause of the United States Constitution. In response, the DOR issued two Department Determinations finding Respondents did "not meet the statutory requirements as written, [and therefore were] not entitled to a refund of sales tax paid for [DME]."[2]

Respondents each filed an action in the circuit court challenging the facial constitutionality of the DME exemption under the dormant Commerce Clause.[3] The DOR and Respondents then filed cross-motions for summary judgment in each case.

Following separate hearings, the circuit court granted summary judgment to each Respondent. The court found unconstitutional the DME exemption's facial discrimination against interstate commerce. Additionally, the court held the "principal place of business in South Carolina" requirement could be severed from the remainder of the DME exemption, thus extending the exemption's application to all sellers of DME, entitling Respondents to a refund.

The DOR directly appealed the circuit court's decisions to this Court, *see* Rule 203(d)(1)(A)(ii), SCACR, and we consolidated the cases for purposes of the appeals.

## II.

The Commerce Clause of the United States Constitution affirmatively grants

---

[2] The Department Determinations did not address the impact, if any, of the dormant Commerce Clause on the DME exemption. This is completely understandable, however, given that an administrative agency has no authority to declare a state statute unconstitutional.

[3] Simultaneously, Respondents each filed a request for a contested case hearing with the Administrative Law Court (ALC). By agreement of the parties, the contested cases were stayed pending resolution of the circuit court actions. According to the parties, they consented to the stays because while the ALC can hold a statute unconstitutional as-applied, it does not have the authority to declare a statute facially unconstitutional.

Congress the power to regulate interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3 (providing Congress "shall have Power . . . [t]o regulate Commerce . . . among the several States"). Because the Constitution bestows authority over interstate commerce to Congress alone, the Commerce Clause impliedly limits states' regulatory powers in that arena. *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330 (1996); *Or. Waste Sys., Inc. v. Or. Dep't of Env't Quality*, 511 U.S. 93, 98 (1994). This implied "negative" aspect of the Commerce Clause limiting the states' ability to regulate interstate commerce is commonly referred to as the dormant Commerce Clause. *Fulton Corp.*, 516 U.S. at 330–31.

Broadly speaking, the dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Assoc'd Indus. of Mo. v. Lohman*, 511 U.S. 641, 647 (1994) (cleaned up). As a result, "[A] State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty*, 467 U.S. 638, 642 (1984); *Bos. Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 332 n.12 (1977) (noting states "may not discriminate between transactions on the basis of some interstate element").

A state law that facially discriminates against interstate commerce is "virtually *per se* invalid." *Fulton Corp.*, 516 U.S. at 331; *Or. Waste Sys.*, 511 U.S. at 99 ("As we use the term here, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."). In fact, "[F]acial discrimination by itself may be a fatal defect, regardless of the State's purpose, because the evil of protectionism can reside in legislative means as well as legislative ends." *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979) (cleaned up) (explaining that in the case of a statute's facial discrimination against interstate commerce, courts must employ the "strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives"). As a result, courts will find improper economic protectionism if the law in question has either a discriminatory effect or a discriminatory purpose. *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (internal citations omitted).

Here, we find the DME exemption has both a discriminatory effect *and* purpose. Looking first at the effect of the DME exemption, the statute clearly results in discrimination against interstate commerce on its face: a seller of DME with its principal place of business out-of-state is required to remit sales tax, whereas a similar seller of DME with its principal place of business in-state is not required to remit the tax. *See Fulton Corp.*, 516 U.S. at 333; *Bacchus Imps.*, 468 U.S. at 271

(striking down Hawaii's liquor tax exemption applicable only to locally produced brandy and wine, and explaining that "the effect [of Hawaii's tax exemption] is clearly discriminatory in that it applies only to locally produced beverages"). Indeed, the DOR offers no argument that the DME exemption does not have a discriminatory effect. The discriminatory effect of the DME exemption, standing alone, is sufficient for us to find the exemption violates the dormant Commerce Clause. *See Bacchus Imps.*, 468 U.S. at 270.

The DOR nonetheless argues the DME exemption is constitutional because it does not have a discriminatory purpose, and the differential treatment of in-state and out-of-state sellers is merely intended to "promote economic development" in South Carolina. However, "a State may not tax interstate transactions in order to favor local businesses over out-of-state businesses." *Id.* at 272–73 ("States may not build up their domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States. Were it otherwise, the trade and business of the country would be at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products of particular States. It was to prohibit such a multiplication of preferential trade areas that the Commerce Clause was adopted." (cleaned up)); *id.* at 273 (finding unpersuasive Hawaii's argument that its legislature merely intended to promote local industry, rather than discriminate against foreign products, because if courts "were to accept that justification, [they] would have little occasion ever to find a statute unconstitutionally discriminatory"); *cf. Bos. Stock Exch.*, 429 U.S. at 326–28 (holding unconstitutional state tax benefits provided for the purpose of encouraging stock transactions on the New York Stock Exchange instead of out-of-state stock exchanges). Thus, we find the DME exemption also has a discriminatory purpose.

Accordingly, because the DOR has failed to "sho[w] that [the DME exemption] advances a *legitimate* local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives,"[4] we conclude the DME exemption fosters the type of economic protectionism prohibited by the dormant Commerce Clause.

## III.

We emphasize we find unconstitutional only the portion of the DME exemption that requires a seller's principal place of business to be in-state in order to receive the

---

[4] *See New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988) (emphasis added).

sales tax exemption. The remainder of the DME exemption does not facially discriminate against interstate commerce and, thus, does not suffer from the same constitutional defect. Because only part of the DME exemption violates the dormant Commerce Clause, we next turn to the question of severability. *See Thayer v. S.C. Tax Comm'n*, 307 S.C. 6, 12, 413 S.E.2d 810, 814 (1992) ("A statute may be constitutional and valid in part and unconstitutional and invalid in part.").

"The test for severability is whether the constitutional portion of the statute remains complete in itself, [capable of being executed,] wholly independent of that which is rejected, and is of such a character as that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution." *Id.* at 13, 413 S.E.2d at 814–15 (cleaned up). Here, Respondents— as the proponents of the severability argument—bear the burden of showing not only that the unconstitutional part of the DME exemption is independent and separable from the remainder, but also that the legislature would have enacted the DME exemption even without the unconstitutional language.

We find Respondents have not carried this burden, albeit through no fault of their own: there is simply nothing in the legislative history of the DME exemption to suggest one way or the other whether the legislature would have passed the exemption absent the unconstitutional language. More specifically the legislature did not discuss or debate the unconstitutional language in the DME exemption whatsoever, leaving us no possible avenue to discern whether that portion of the statute was crucial to its decision to provide the exemption. Moreover, in the absence of clear evidence of the legislature's intent, the lack of a savings clause in the DME exemption is, perhaps, telling. *See S.C. Tax Comm'n v. United Oil Marketers, Inc.*, 306 S.C. 384, 389, 412 S.E.2d 402, 405 (1991) ("In the absence of a legislative declaration that invalidity of a portion of the statute shall not affect the remainder, the presumption is that the legislature intended the act to be effected as an entirety or not at all."); *cf. Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 649, 528 S.E.2d 647, 654 (1999) (explaining the existence of a clearly worded savings clause "evidences strong legislative intent" for the distinct portions of a statute to be treated independently).

Accordingly, we find Respondents have not shown the unconstitutional portion of the statute is independent and severable from the remainder. We therefore declare the entire DME exemption invalid but, again, invite the legislature to reenact the exemption—without the unconstitutional language—if it finds such action appropriate.

## IV.

The State, through the DOR, cannot provide sales tax exemptions in a manner that discriminates against interstate commerce. We affirm the circuit court's decision declaring the "principal place of business in South Carolina" language of the DME exemption unconstitutional under the dormant Commerce Clause. However, because Respondents have not carried their burden to show the legislature's intent, we decline to sever the unconstitutional language and instead declare the entire DME exemption invalid. Under the facts of this case, we affirm the circuit court's decision to order refunds to Respondents for the sales tax imposed upon the DME they sold during the contested time periods.[5] However, having found the DME exemption as a whole is invalid, we assume going forward that all sellers of DME—including Respondents—will be required to pay sales tax unless and until the legislature enacts a new, modified DME exemption. The decision of the circuit court is therefore affirmed as modified.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., FEW, JAMES and HILL, JJ., concur. FEW, J., concurring in a separate opinion.**

---

[5] The DOR conceded that, should its arguments not prevail, refunds were appropriate. However, because Orthofix requested a refund for a period of time greater than the three-year statute of limitations provided for in section 12-54-85(F)(1), we limit the refund to Orthofix to the amount of taxes paid under the DME exemption for the period between April 1, 2017, to March 31, 2020.

**JUSTICE FEW:** I completely agree with Justice Kittredge's analysis and result in this case. I write separately to explain one additional reason I have for refusing to sever the unconstitutional geographical limitation on eligibility from the durable medical equipment (DME) sales tax exemption.

Sales taxes, of course, provide revenue to the State. Exemptions to sales tax reduce revenue. When the General Assembly chooses to enact a sales tax exemption, it carefully studies the impact such an exemption will have on State revenue. The extent to which an exemption will affect State revenue is part of the basis on which the General Assembly decides whether to enact a particular exemption.

In this situation, the General Assembly chose to permit only South Carolina businesses to have the benefit of the DME exemption. This choice eliminated from State revenues only a portion of the total revenues the State would otherwise earn from sales tax on DME. In deciding to enact the exemption, therefore, the General Assembly considered only the impact the geographically limited exemption would have on the State's revenue. It did not consider the impact a geographically unlimited DME exemption would have. If this Court were to sever the unconstitutional geographic limitation from the DME exemption, thereby expanding the scope of the exemption to all sellers of DME, this Court would be making the decision to limit State revenue in a way never considered by the General Assembly.

The South Carolina Constitution grants the General Assembly the exclusive power to provide for the revenues and expenditures of State government. *See* S.C. CONST., art. X, § 7 ("The General Assembly shall provide by law for a budget process to insure that annual expenditures of state government may not exceed annual state revenue."); *see also* 1 James Lowell Underwood, *The Constitution of South Carolina: The Relationship of the Legislative, Executive, and Judicial Branches* 8 (1986) (identifying "three key points in the use of the power of the purse: (a) the budget planning process, (b) the tax-raising and appropriations processes, and (c) the administration of the expenditure of funds following the passage of money bills," and stating, "All three of these tentacles of fiscal power stem from a common conceptual core: the branch that controls the power to appropriate money must also participate in the budget planning and post-appropriations phases in order to make its fund allocation legislation effective, and in order to discharge the legislature's role as protector of the public fisc from the abusive use of the monetary power").

There are many instances in which the courts of this State make decisions through

the "judicial power" granted to us pursuant to article V, section 1 of our Constitution that impact "the public fisc" in a retrospective manner. In this case, however, were this Court to sever the unconstitutional geographical limitation, thereby expanding the DME exemption, we would be prospectively reducing State revenue. Such a decision should be made by the General Assembly, and if this Court were to do it, our decision would violate article X, section 7 and the separation of powers provision of article I, section 8.

For this additional reason, I join the majority opinion.